LiviNGSTON, J.
delivered the opinion of the court. The premium on this insurance cannot be retained. The policy in explicit terms declares, “ the adventure shall begin from, and immediately following, the loading of the goods at La *341 Yera Cruz.” At tbis port, whitber tbe outward cargo was insured, tbe Alert was not permitted to unload, or to remain in port, whereupon sbe sailed for New-Orleans m distress.
Tbe parties clearly intended to insure only sucb goods as were taken on board at La Yera Cruz; or, in other words, tbe return cargo. Independent of the unequivocal terms made use of, tbe plaintiffs could not contemplate bringing back to New York tbe property they bad sent abroad; the warranty also of its being American, might have been true of the one cargo and not of the other. "Whether tbe outward policies, by tbe denial of an entry at La Yera Cruz, continued or not, after tbe vessel’s departure thence, will make no difference. Tbe hazard which tbe defendants would have run, on their present construction, is much greater than tbe one they actually assumed. Would they not have asked a higher premium for insuring goods which had been several months at sea, and might have been greatly damaged, on board of a vessel too, which had suffered a long detention by capture, whose masts were sprung, and which was otherwise in a shattered state, and short also of provisions and water, than for underwriting a cargo laden at the place where the policy was to attach, and on a vessel thoroughly repaired, and properly found for the voyage she was undertaking ? If these goods were really intended as the subject of insurance, the defendants could never have been called on for a loss, inasmuch as the vessel was not repaired, provisioned, or watered, as she ought *to have been. To what cause this was to be ascribed is of no importance, it always being part of the contract that such shall be the condition of every vessel at the commencement of a voyage. But here it is conceded, that her distressed plight was owing to perils insured against by former policies, and evinces that the defendants did not mean to take her up until after her safe arrival at La Yera Cruz. Again, is it not a part of the understanding, that *342 tbe goods shall not have been damaged by tbe sea when' tbe voyage begins ? Who can say this was not tbe case here ? Suppose at New Orleans tbe cargo bad appeared «so much spoiled as to justiiy an abandonment, or a claim for a heavy partial loss, bow was it to be ascertained when tbe injury happened, before or after leaving La Yera Cruz? In this way tbe defendants would have been exposed to a loss which had been occasioned in a part of the iter, during which it is not pretended they run any danger. When it is agreed, then, that the risk shall commence from the lading of goods, at a particular port, this is so far from being a nugatory provision, which we have a right to say means nothing, that the underwriter has a palpable interest in exacting a literal compliance, or to consider himself exonerated. These arguments, although not urged at the bar, are conclusive in favor of the plaintiffs. But in Vredenburg v. Gracie, it is said a different construction was given to this clause, and that the goods shipped at New York were considered as covered by the policy, although the adventure was to begin from their loading in the West Indies. Such a decision certainly took place; but it appeared that the underwriter was informed that the goods intended to be insured were shipped from New York, and that the vessel had proceeded to the West Indies (where she was at the time of subscribing the policy) without insurance. A letter was also shown to him, stating the vessel’s arrival at Cape Nicola Mole, where she had disposed of a small part of the cargo, and was about proceeding to St. Mark’s with the residue. This explanation, which was admitted, presents a very different contract from the one on which we are now deciding, and which, therefore, cannot be governed by it. It was a trading voyage in the West Indies, where it is not usual to carry produce of one island to another. It was also, by the express understanding of the underwriter, a policy on goods shipped at New York, and the vessel being already in the West Indies, that part of the world was only mentioned as the place where the risk *343 was to commence. *But with, all these explanations, we well remember that one of the first counsel who ever appeared at this or any other bar, and who was concerned with me for the plaintiff in that cause, entertained a very strong opinion that our client would have to apply to a court of chancery to amend his policy, to enable him to succeed in a court of common law.
From this view of the question, it is not necessary to say how the interdiction to trade at La Yera Cruz affected the prior insurances. Whether they terminated there, or continued during the route to New Orleans, our opinion is the same.
The cargo taken in at New Orleans being covered by prior insurances, the defendant was of course at no risk after the schooner left that place, and thinking, for the reasons mentioned, that the policy did not attach during her voyage from La Yera Cruz to New Orleans, the plaintiffs must have judgment.
Postea to the plaintiffs.