MURRAY AND OGDEN *against* THE COLUMBIAN INSURANCE
COMPANY.

THE SAME *against* THE SAME.

*Insurance at and from Cagliari to St. Petersburg or Archangel,* with lib·rty to touch and trade at *Bergen, &c.* up on all kinds of goods, &c. "laden or to be laden on board the good American ship Rolla, &c.* beginning the adventure, &c. from and immediately following the loading thereof on board, &c.* The vessel sailed from *New York* with a cargo, and arrived at *Palermo,* where she discharged part of her cargo, and from thence went to *Messina,* and there unloaded and sold a further part of her cargo, and took on board other goods, and proceeded to *Cagliari,* where all her cargo was taken out and put on deck, in order to take in a quantity of salt, and the cargo was examined and restowed in perfect order. The vessel sailed from *Cagliari,* bound for *Bergen,* on the 21st of *April,* having on board a cargo consisting partly of goods which she carried out from *New York,* and the residue of goods laden on board at *Messina,* except 500 salms of salt, taken on board at *Cagliari,* and on the 25th of *April* was captured by a *French* privateer. It was held that the policy attached only upon the *salt,* which was actually laden on board at *Cagliari.*

Under a general averment of interest in the entire thing insured, the insured may recover in proportion to the quantum of interest he proves at the trial.

M. purchased the whole of a cargo, in which L. was to be interested *one third,* and which was charged to him by M, and the invoice and bill of lading made out in their joint names. Some months after, L. directed his correspondent to place the proceeds of the cargo to the credit of M. It was held that M. had not such a *lien* on the *one third* belonging to L. as amounted to an insurable interest, nor could M., who had insured the whole, and had averred an interest in the whole cargo, recover for more than two thirds.

M. and L., being joint owners of a ship, in equal proportions, M. effected an insurance on the whole ship in his own name; the policy contained a valuation of the ship at 16,000 dollars, which was her full value, and M. averred the interest to be in him solely. A loss having occurred, it was held that M. could recover for a moiety only of the sum at which the vessel was valued, or according to the quantum of his interest proved; but that he was entitled to a return of one half of the premium paid on the whole sum.

THESE were two several actions on two policies of insurance; one on the cargo, and the other on the ship. The policy on the cargo was dated the 13th of *November,* 1810, and effected in the name of *John Murray & Sons,* the plaintiffs, on account of " themselves, at and from *Cagliari* to *St. Petersburgh* or *Archangel,* with liberty to touch and trade at *Bergen,* in *Norway,* upon all kinds of *goods* and merchandises, laden or to be laden on board the good *American* ship called the *Rolla,* beginning the adventure upon the said goods and merchandises from and immediately following the loading thereof on board the said vessel at *Cagliari.*" The goods were not valued. The premium was 16 1-2 per cent. to return 5 per cent. if the risk ended safely at *Bergen.* In case of loss, the same to be paid in thirty days after proof of loss and interest in the plaintiffs.

The declaration averred a loss by *French* capture, and that the insurance was made for the proper account, use, and benefit of the plaintiffs, and that they were the sole owners of the property insured.

The cause was tried at the *New-York* sittings, in *November,* 1813, before the chief justice. It was admitted that the plaintiffs had duly abandoned for a total loss, and had exhibited, as proof of interest and loss, an invoice, bill of lading, affidavit

of *Murray,* one of the plaintiffs, a letter from the captain, dated
*Cagliari,* 21st of *April,* 1810, to Messrs. *Justin & Elias Ly-*
*man,* a letter from *J. & E. Lyman* to *Philip Sansom & Son,* of
*London,* dated *New-York,* 18th of *October,* 1810, a copy of the
protest of the master and several of his crew, made at *Tunis,*
the 8th of *May,* 1810, a copy of a letter from the *American*
consul, at *Tunis,* to the *American* consul, at *Gibraltar,* and the
deposition of the chief mate of the *Rolla.* These documents
were produced and read at the trial, and a question was made
as to the sufficiency of the preliminary proofs, but the point
was not insisted on, in the argument of the case.

The invoice of the goods, dated at *Cagliari,* the 21st of
*April,* 1810, signed by *Simeon Lyman,* as master and supercargo,
stated the shipment to be for account and risk of Messrs. *John
Murray & Sons,* and Messrs. *Justin & Elias Lyman;* and the bill
of lading, dated at *Cagliari,* the 16th of *April,* 1810, specified
the goods shipped to be the property of Messrs. *John Murray
& Sons,* and Messrs. *Justin & Elias Lyman,* and shipped for
their sole account and risk.

*Murray,* in his affidavit, deposed, that *John Murray & Sons*
were owners of two thirds of the cargo, and were *interested* in
the other one third; Messrs. *Justin & Elias Lyman* having
agreed, before the insurance was made, that the proceeds of the
said one third should be remitted to *Philip Sansom & Son,* of
*London.* and passed by them to the credit of *John Murray &
Sons,* in consideration of advances made by them for the pur-
chase of the said one third of the cargo.

The letter of Messrs. *J. & E. Lyman* to *Philip Sansom &
Sons,* requested them to pass to the credit of Messrs. *Murray &
Sons* the amount of all remittances which might be made to
them, on account of the owners of the ship *Rolla, S. Lyman*
master; Messrs. *J. Murray & Sons,* and themselves, *J. & E. Ly-
man,* being the only owners.

The *Rolla* sailed from *New-York* the 9th of *May,* 1809. The
chief mate deposed, that they arrived at *Palermo* in *July,* 1809,
where they disposed of part of the outward cargo. The ship
left *Palermo* in *February,* 1810, and reached *Messina* in three or
four days, where the residue of the outward cargo was disposed
of; except 36 hogsheads of tobacco, 30 hogsheads of fine su-
gar, and 1,050 pieces of logwood, which were reshipped at

*Messina*, where a new additional cargo was taken on board, consisting of 50 pipes of olive oil, 20 pipes of lemon juice, 150 boxes of lemons, and 8 quintals of cork-wood. The ship, with such new cargo, and the remainder of the outward cargo, above mentioned, sailed from *Messina* the 24th of *March*, 1810, and arrived at *Cagliari* the 1st of *April* following. At *Cagliari*, all the cargo brought from *Messina*, except the logwood, was hoisted out upon deck, in order to take in 500 salms of salt, which was the only part of the cargo put on board at that place. The salt was put at the bottom, as ballast, the ballast which was in the vessel on her arrival at *Cagliari* having been previously taken out for that purpose, and the logwood was shifted from forward and aft, and replaced midship, to serve as *dunnage* for the salt. After the salt was taken on board, the rest of the cargo was stowed away, so that the whole cargo was restowed at *Cagliari*. While the cargo was shifting, it was examined, and appeared to have received no damage, but was in the same state as when put on board at *Messina*, and no accident had happened while the vessel was at *Messina*, or during her passage to *Cagliari*, that would be likely to occasion any damage. *Cagliari* is an open bay, in which vessels load and unload; and instead of landing the cargo brought from *Messina*, it was put on deck, in order to take in the salt.

The cargo specified in the invoice and bill of lading, as shipped at *Cagliari*, consisted of the articles above mentioned, brought from *Messina*, and the 500 salms of salt, taken on board at *Cagliari*. The tobacco was, by mistake, omitted in the bill of lading.

The vessel sailed from *Cagliari* on the 21st of *April*, 1810, for *Bergen*, and on the 25th of *April* was captured by a *French* privateer, and carried into *Tabarca*, in the *Regency* of *Tunis*.

It was proved by *William Swan*, a clerk of the plaintiffs, that they were to advance the whole of the outfit of the voyage, and that Messrs. *J. & E. Lyman* were to be interested in one third of the proceeds, if paid for, when the voyage ended; and, pursuant to this agreement, the invoice and bill of lading of the cargo from *New-York*, were in the joint names of the plaintiffs and Messrs. *J. & E. Lyman*. The Messrs. *Lymans* owned one half of the ship. The agreement as to the cargo was not in writing, but *J. & E. L.* were charged in the plaintiffs' books with their proportion of the outward cargo. No notes

were given by the Messrs. *Lymans* at the time; but about two years after, application was made for payment, and notes were then given by them to the plaintiffs.

The counsel for the defendants moved for a nonsuit, on two grounds: 1. That the plaintiffs had shown an interest only in two thirds of the cargo, instead of the whole, as averred in the declaration. 2. That the plaintiffs could not recover for any part of the cargo, which was not actually shipped at *Cagliari;* and as the *salt* was the only article taken on board at that place, the recovery could only be for two thirds of the value of that article.

The judge expressed an opinion, that the plaintiffs had shown an insurable interest in the whole cargo specified in the invoice; but reserved all the points: and a verdict was taken for the plaintiffs for a total loss, subject to the opinion of the court on the points reserved; and to an adjustment to be made by persons to be appointed by the court, at the time of rendering judgment on the case.

In the action on the policy on the *ship*, the declaration averred a loss by capture, and that the interest was in the plaintiffs.

There was a valuation in the policy, but the sum was not stated in the case; it was admitted, that the value, at the time of the insurance, was not more than 16,000 dollars.

At the trial, the proofs were the same as in the other action, except that the preliminary proof of interest consisted of the *register* of the ship, dated 28th *April,* 1809, which was in the names of *Justin Lyman, Elias Lyman, John R. Murray,* and *William Ogden:* and one of the plaintiffs, *Murray,* made oath that the plaintiffs were interested in the ship, to the full amount insured by the policy, and continued so interested until the time of loss.

The defendants' counsel insisted, 1. That the plaintiffs were not entitled to recover any thing, inasmuch as they had not proved such an interest as they had averred. 2. That, at all events, they could recover only to the extent of one half of the sum insured; and these points were reserved by the judge, and a verdict taken for the plaintiffs, for a total loss, subject to the opinion of the court, &c.

*Colden,* for the plaintiffs. 1. The plaintiffs had a *lien* on the

ALBANY,
August, 1814.

MURRAY
v.
COL. INS. CO.

* *Marshall on
Ins.* 105. B. 1.
c. 4 s. 1. 1
*Burr* 489.
*Hibbert* v. *Car-
ter,* 1 *Term Rep.*
745. *Le Cras* v.
*Hughes.Marsh.*
108 *Hill* v.
*Secretan* 1 *Bos.
& Pull.* 315.
*Park,* 574
*Wolf* v. *Horn-
castle.* 1 *Bos.
& Pull.* 316.
3 *Bur.* 1394.
† *2 Caines' Rep.*
337.
‡ 4 *Johns. Rep.*
in note.

cargo for their advances, and that was an insurable interest.   A *qualified,* as well as an absolute interest, may be insured.*  Almost any qualified property in the thing insured, or any reasonable expectation of profit or advantage to arise therefrom, may be insured, if it amount to a legal or equitable title.

2. Next, as to the extent of the interest, or whether the policy covers the goods not actually put on board at *Cagliari.*   [The counsel here stated the facts in the case, and insisted that not only within the terms, but within the sense and spirit of the contract, the goods were *laden* on board at *Cagliari.*]   In the case of *Graves* and *Scriba* v. *Marine Insurance Company,*† which may be cited on the other side, the original cargo had been carried to a great distance, and was not examined and restowed, and the court held the party to the strict terms of the policy; but in *Vredenburgh* v. *Gracie,*‡ where the insurance was from the *loading* of *the goods* on board in the *West Indies,* and the vessel, while proceeding with the same cargo she had carried out from *New-York,* from *Nichola-mole* to *St. Marks,* was captured, the court decided that the insured were entitled to recover.

As to the *ship,* the first question is as to the interest of the plaintiffs.  The cases cited in relation to the interest in the cargo are applicable here, for the plaintiffs made advances on account of the other part owners, and had their *lien* on the ship.   It is true the register was in the joint names of the plaintiffs and Messrs. *Lymans;* but a documentary title need not be shown

§ 3 *Mass. Rep.*
133.

in order to prove a *lien* on a ship.   In *Oliver* v. *Green,*§ decided in the supreme court of *Massachusetts,* a part owner of a vessel had hired the remaining part, and was to pay the value in case of her loss, and the court held that he had an insurable interest in the whole vessel.

[THOMPSON, Ch. J.   But should not the insurers be informed of the nature of the interest; or should it not be insured specially as a *lien?*]

We may insure generally, and show at the trial the nature and amount of our interest.   The averment of interest in the declaration may be general or special, and under the general averment the plaintiff may give in evidence any interest he

may have in the subject insured. But if he aver a special interest, he must prove it as stated.*

Again, this is a valued policy, and the valuation applies to the interest of the insured, whatever it may be, and it is enough if he shows an interest to the amount insured.† The defendants, moreover, have received a *premium* on the whole sum insured, no part of which can be recovered back, nor can there be any averment of short interest.

*C. I. Bogert* and *S. Jones*, jun. contra.   1. The goods which were on board at *Cagliari*, except the salt and a few articles at *Messina*, were actually laden on board at *New-York*, eleven months before. The voyage insured was to commence from the *lading on board* at *Cagliari*. The voyage must be truly and explicitly defined, and the policy is to be understood according to the plain and unequivocal language of the instrument. There is no usage of trade to explain the meaning of the parties; nor can any *parol* agreement, or understanding of the parties, be received.‡ In *Vredenburgh* v. *Gracie* the case was decided only by *Lansing*, Ch. J. and *Lewis*, J., and they went on the ground that the insurers were informed, at the time, of the situation of the vessel, and they intended to insure her on a trading voyage; and *Livingston*, J. when noticing that case, in *Graves and Scriba* v. *Marine Insurance Company*, says, with all the explanations given, *Hamilton* and himself were of opinion that the plaintiffs could not succeed, without applying to the court of chancery to amend the policy. In *Richards* v. *Marine Insurance Company*,§ Mr. Justice *Spencer*, who delivered the opinion of the court, considered the question as completely at rest, since the decision in *Graves and Scriba* v. *Marine Insurance Company*.

[THOMPSON, Ch. J. The court are so much inclined to that opinion, that you need not argue the point further.]

We shall only add one case, that of *Spitta* v. *Woodman*,‖ decided in the court of C. B. in *England*, which is precisely to the same point.

2. The plaintiffs had an insurable interest in *two thirds* only of the *salt* laden on board at *Cagliari*. If any *lien* was intended, or any legal interest existed in the plaintiffs, why were the invoice and bill of lading in the names of the *Lymans* joint-

ALBANY,
August, 1814.

MURRAY
v.
COL. INS. CO.
* *Marsh.* 682.
*Lawrence* v.
*Vanhorne*, 1
*Caines' Rep.*
276  284. per
*Radcliff*, J.
† *Post and o-
thers* v *Phœ-
nix Ins. Co.* 10
*Johns. Rep.* 79.

‡ *Kaines* v.
*Knightly, Skin.*
451.   *Marsh.*
705.  *Mumford*
v. *Hallett*, 1
*Johns.Rep.*433.

§ 3 *Johns. Rep.*
308.

‖ 2 *Taunt.Rep.*
416.

ALBANY,
August, 1814.

MURRAY
v.
COL. INS. CO.

ly with the plaintiffs. One of the *Lymans* was actually on board of the vessel, and had, therefore, not only the legal title, but the legal possession of their interest.

Again, the *lien*, if any, was on the goods shipped from *New-York*, not on the *salt* purchased for joint account of the defend-

*Marsh.* 105. ants and Messrs. *Lymans*, at *Cagliari.**
312. 2 *Mass.*
*Rep.* 365.

3. As to the ship, the only proof of interest is the register, and it does not accord with the averment in the declaration. No person can have a legal or equitable title to a ship, unless he is

+ 5 *Term Rep.* named in the register. In *Camden* v. *Anderson*,† where *four*
709. *Marsh. on*
*Ins.* 115. 116. persons purchased a ship, which was registered in the names of *two* of them, it was held that the *four* had not insurable interest. An averment of interest in two, will not be supported by show-ing an interest in four.

‡ 7 *Johns. Rep.* In *Riley* v. *Delafield*,‡ where the plaintiff had sold the ship,
522. 2 *Johns.*
*Rep.* 346. *Dall.* but the purchaser agreed that he should have the whole freight
*Rep.* 421. 463. for the voyage, for which she had been previously chartered, and which was the voyage insured, it was held that the plaintiff had not an insurable interest, as freight, and could not recover, unless the precise nature of his interest was disclosed to the insurers, and specially insured by him.

The case of *Post and others* v. *The Phœnix Insurance Com-pany* is not applicable. There *one fourth* of the ship was insured, and the *valuation* applied to the interest insured, not to the whole ship. Here the insurance is on the ship generally, with-out mentioning any part; and it was so intended by the plain-tiffs, for they supposed they had an insurable interest in the whole. The plaintiffs having proved an interest in a moiety only of the ship, that must be the extent of the recovery.


*T. A. Emmet*, in reply, insisted that the plaintiffs had an in-terest in the whole cargo, in two thirds absolutely, and in one third as a *lien* for their advances. Where one person has an ab-solute, and another a qualified, interest in the same subject,

*Marsh.* 150. each may insure,§ and may recover the whole. In the case of *Hill and another* v. *Secretan,* the consignor shipped goods, part of which were to be held for the plaintiffs, who were cre-ditors of the consignors, and they were held to have an insurable interest.

It is said a qualified interest should be specifically insured. The cases decided as to *bottomry* and *respondentia* are not appli-

cable to all qualified interests. The rule, in regard to *bottomry* and *respondentia*, is a mere rule of practice adopted in *Europe*. They are, in themselves, a species of insurance. Lord *Mansfield*, in *Glover* v. *Black*,* states the ground of their decision to be, that bottomry and *respondentia*, by the "*custom* of merchants," is insured specially; but he strongly intimates that under an insurance on goods generally, a *mortgage*, or other special *lien*, might be given in evidence. In *Wolf* v. *Horncastle*,† *Buller*, J. says that "a *debt*, which arises in *consequence* of the article insured, and which would have given a *lien* on it, gives an insurable interest," which is the present case. In *Russel* v. *The Union Insurance Company*,‡ it was alleged that there was a fraudulent concealment of the interest, which is not pretended in this case. *Washington*, J. observes that "it is clear that a person having a *lien* on the cargo, may cover it by an insurance on goods." "It is true, that the assured should communicate to the underwriters the nature of his interest in the subject insured, though it need not be specified in the policy;" and a question of fact was, "whether the insurance of the special interest, and not of the principal ownership, made a material difference in the risk, or would have altered the premium: and if the fact was not sufficiently disclosed to the defendants," he said, "the omission would vacate the policy."

It is contended that the goods, except the salt, are not covered by the policy, because not within its terms. Suppose that it had been necessary to repair the ship at *Cagliari*, and for that purpose to have landed the whole cargo, or to have put it on board of lighters, and after the repairs were completed, it should be again "laden on board at *Cagliari*," would not this come within the terms of the policy, and would not the policy attach on the whole cargo? The distinction between such a case, and the one before the court, must be extremely nice indeed.

As to the ship, if the plaintiffs had a *lien*, as we contend, on the other half, for their advances, the case of *Oliver* v. *Green* is in point.

In *Rising* v. *Burnett*,§ it was held that one of several part owners might insure freight generally, without mentioning what share he had in the ship, and might declare generally, and recover for an *aliquot* part, or according to his interest.

ALBANY,
August, 1814.

MURRAY
v.
COL. INS. CO.

* 8 *Burr.* 1394.
*Marsh.* 317.

†1 *Bos. & Pull.*
316.

‡ 4 *Dall. Rep.*
424.

§ *Marsh.* on
*Ins.* 730.

The *premium* aids in determining the intention of the parties. It being paid on the whole sum, affords the strongest inference that the defendants meant to insure the interest of the plaintiffs to that amount.

VAN NESS, J. delivered the opinion of the court. The first question made in this cause, is, whether the policy attached upon any other part of the cargo than the salt. The policy is *at* and *from Cagliari*, to *St. Petersburgh*, upon all kinds of goods and merchandises, laden or to be laden on board the *Rolla ;* beginning the adventure "from and immediately following the loading on board the said vessel, at *Cagliari.*" The plaintiffs' right to recover for any other part of the cargo than the salt, depends upon the fact, whether it was shipped at *Cagliari* or not ; it having been solemnly determined, on different occasions, by this court, as well as the courts in *England*,(a) that, in policies like the present, the insurance attaches only on the cargo taken on board at the port where the adventure is to begin. (*Graves* and *Scriba* v. *Mar. Ins. Comp.* (2 *Caines* 399.) *Richards* v. *Mar. Ins. Comp.* (3 *Johns.* 307.) *Murray* v. *Col. Ins. Comp.* (4 *Johns. Rep.* 443.) *Robertson et al.* v. *French,* (4 *East,* 130.) *Grant* v. *Paxton,* (*Marsh. on Ins.* 274.) *Hodgson* v. *Richardson,* (1 *Wm. Bl. Rep.* 463.)

The evidence in this case does not support the allegation on the part of the plaintiffs, that the whole cargo was shipped on board, at *Cagliari*. Except the salt, it consisted of the remains of the outward cargo, and of merchandise purchased and put on board the *Rolla,* at *Messina*. The hoisting the cargo out of the hold of the ship, and restowing it at *Cagliari,* does not amount to loading it on board the ship at that place, either according to the words, the reason, or the spirit of the contract. This part of the case is too clear to require any further comment. The policy attached, therefore, only upon the salt ; and the next question is, whether the plaintiffs are to recover for the loss of the whole of this article, or for any, or for what proportion of it ?

For the plaintiffs, it is contended, that they had an insurable interest in the whole of the cargo, as having a *lien* upon one third, sold to the *Lymans* to secure the amount of the purchase money,

(a) By the decision of the court of K. B. in *Hornyer* v. *Lushington,* (15 *East's Rep.* 46.) this question, which was again brought before the court, was finally settled.

and as being themselves the owners of the residue. The evidence does not establish that any such *lien* existed. The sale made to the *Lymans* was an absolute one. They were, in the first place, charged with the amount in the plaintiffs' books, and afterwards gave their notes for the payment of the same. The invoices and bills of lading were made out jointly in the names of the plaintiffs and the *Lymans*; not only those relating to the outward cargo, but also those made out at *Cagliari*. It is true that *Swan* says, the *Lymans* were to be interested in one third of the proceeds, if paid for when the voyage ended, and that such was the agreement of the parties. So far is this statement by the witness from being any evidence of a *lien*, that, if it be true, the purchase was not consummated; it was a mere agreement to sell on condition, that, at the end of the voyage, the purchasers should pay. It is a relation altogether at variance with the allegation that there had been a sale, and that the plaintiffs had a *lien* upon the goods, for the consideration. But the whole of this part of *Swan's* testimony is utterly inconsistent with the other, and particularly the written evidence in the case, all of which most satisfactorily shows that the plaintiffs, at the time of the sale, trusted to the personal responsibility of the *Lymans*. It is remarkable, also, that it was not until several months after the insurance had been effected, that the letter to Messrs. *Sansom & Son* was written by the plaintiffs, directing them to pass to their (the plaintiffs') credit, any remittances made on account of the owners of the *Rolla*. The plaintiffs having paid for the whole of the outward cargo, it is possible they may have intended to preserve a *lien* for their advances upon that portion of it which was sold to the *Lymans;* but judging from the proofs before us, as we are bound to do, they have omitted to frame their contract in such a manner as to effectuate that intention. The plaintiffs, however, were the owners of two thirds of the salt, and the value of that they are entitled to recover.

It is supposed by the defendants' counsel, that, under this insurance of the whole cargo, and the pleadings in the cause, the plaintiffs were bound to show they had an insurable interest in the whole. But it is not necessary for the assured to have the precise interest, or proportion of interest, he intends to insure, inserted in the policy. If he has an insurable interest in the entirety of the cargo, he may cause it to be separately insured;

and under a general averment of interest in the entire thing insured, he shall recover for the loss, in proportion to the quantum of interest he proves upon the trial. (*Marsh. on Ins.* 682. 710.) *Rising* v. *Burnett*, (*Ib.* 730.) *Lawrence* v. *Van Horne and Clarkson*, (1 *Caines' Rep.* 276.) *Lawrence* v. *Sebor*, (2 *Caines' Rep.* 203.)

It is not, I believe, claimed by the plaintiffs, that, under this insurance and the averment in the declaration, they can recover for that part of the cargo belonging to the *Lymans*. The insurance is for their own account, and there was no intention to cover the interest of any other person. The declaration, moreover, expressly avers that the insurance was really and truly made for the proper account, use and benefit of the plaintiffs themselves. The result is, that the plaintiffs are entitled to recover the value of the two-thirds of five hundred salms of salt, laden on board the *Atlantic*, at *Cagliari*, and for no other part of the cargo.

The other suit between the same parties is upon the policy on the ship, which is a valued one, that on the cargo being open. The insurance is upon the whole ship; the plaintiffs, probably, supposing, at the time, they had an insurable interest in the whole. Like the cargo policy, the insurance is solely of their own account; and the declaration avers the interest to be in them solely. The ship is valued at 16,000 dollars, and it is "admitted, that the real value of the whole vessel, at the time "of the insurance, was not more than 16,000 dollars."

It appearing upon the trial that the plaintiffs owned only a moiety of the ship, (and there is not a shadow of proof of any greater interest of any kind,) it was objected that they were not entitled, under the pleadings, to recover for any part. This objection has already been considered and answered in deciding on the policy on the cargo. There is no doubt that the plaintiffs may recover according to the interest proved; and the only remaining question is, whether they shall recover the value mentioned in the policy, or half that sum only?

I have not found any case where this very point has been determined, and it must, therefore, rest upon general principles. The ground of decision in the cases that have been referred to, in the argument on the case on the cargo-policy, is, that although the insurance be general upon a ship or cargo, and

the declaration avers a general interest in the plaintiffs, yet the recovery shall be according to the interest and loss proved upon the trial. The contract of insurance is purely a contract of indemnity, and it is equally so, whether it be an *open* or *valued* policy. Hence, it follows, that the plaintiffs ought not to recover more than half the sum at which the whole ship is valued; for as they owned but one half, they ought not to recover more than they have lost. In an open policy, in cases of this kind, the amount of the recovery is determined and ascertained by recurring to the prime cost, in the usual manner. When the policy is a valued one, and the assured, on the trial, shows an interest only in a part of the subject insured, as, for example, an eighth, a fourth, or a half, he will recover an eighth, a fourth, or a half of the valuation in the policy, and a greater or smaller proportion of such valuation, according to the quantum of interest proved. It is supposed, that in the case of *Post et al.* v. *The Phœnix Insurance Company*, (10 *Johns. Rep.* 79.) a different rule was adopted; but on an examination of that case, it will, I think, be found fully to support the principle which I have attempted to establish. There one fourth only of the ship was insured, and the court held that the valuation applied to the interest insured, (namely, one fourth part,) and not to the whole of the ship. If it had appeared in this case that the valuation had been applied to such part of the vessel only as the plaintiffs owned, being a moiety, another question would have been presented, which it is not necessary here to examine. But there cannot be a doubt that the valuation applied to the whole ship, and for the same reason that the recovery in the case last mentioned was for the whole value in the policy, it can, in this case, be only for a moiety. The case of *Rising* v. *Burnett*, before cited, for another purpose, seems also to bear upon this point. It was this: the plaintiff was one of four part owners of a ship, and each insured the freight, without mentioning that it was only a *share of the freight* that he was interested in; it was objected on the part of the defendant, that the plaintiff should have alleged his interest according to the truth, and not in that general form; that the register of the ship, which was produced, was conclusive evidence as to the persons who were owners, and of their respective shares, and the register showed that the plaintiff was only owner of the fourth part. Mr. Justice *Bul-*

*ler*, who tried the cause, held, that this being an open policy, the plaintiff might recover according to his interest; and he had a verdict accordingly. *Marshall*, in a note to this case, observes, that if it had been a valued policy, it would have made no difference, for the insurer may dispute the amount of the interest of the insured if it be overvalued, as well in an action upon a valued policy, as upon an open one. The reason he gives why there would not have been a difference when applied to a case of an overvaluation, is, undoubtedly, a sound one; but, in a case like the present, where the insurance and the valuation (which is a fair one) are upon the whole ship, this reason would not hold, because here is no overvaluation. And the true reason why there can be no difference between an open policy and a valued one, in cases circumstanced like the present, will, I think, be found in the remarks which have already been made.

As the defendants, however, have received the premium upon the whole amount of the sum mentioned in the policy, it follows there must be a return of one half, which, in the adjustment hereafter to be made, according to the stipulation in the case, must be allowed the plaintiffs.

Judgment for the plaintiffs, accordingly.