Morrison's Adm'r *v*. Tennessee Marine & Fire Ins. Co.

MORRISON'S ADMINISTRATOR, Respondent, *vs*. TENNESSEE MARINE AND FIRE INSURANCE CO., Appellant.

1. An absolute assignment or sale of insured property after insurance is effected, takes away the insurable interest of the vendor, and creates a bar to the right of action on the policy, unless by some means its existence has been preserved for the benefit of the assignee.

2. Where A. effected an insurance on property, and afterwards sold and conveyed it to B., who reconveyed it to a trustee to secure to A. the payment of the purchase money, *it was held* that A. retained an insurable interest, and after a loss might recover on the policy to the extent of his actual loss, not to exceed the sum insured.

3. The failure of the insured to disclose the state of his title, or the extent of his interest in the insured property, will not avoid the policy, unless there is a fraudulent concealment or misrepresentation. If the insurer deems this information material, he may protect himself by inquiry, or by the conditions of his policy.

4. The right of a surety to be subrogated to the securities of his principal, does not arise until he has paid the principal's debt. Thus the insurance company could not be subrogated to A.'s rights against B. until it had paid the insurance, if at all.

*Appeal from St. Louis Court of Common Pleas.*

*E. & B. Bates*, for appellant. 1. The sale by Morrison passed away his interest in the premises insured, and therefore discharged the underwriter. 2. If Morrison's conveyance and the deed of trust for the security of the notes to him be considered as one transaction and merely a change of his interest in the premises insured, yet it is such a change of interest as releases the underwriter. For the contract of insurance was made with Morrison as the owner of the premises, and the change so diminished his interest in the premises and in its protection from fire, as to alter the whole basis of the contract and destroy the underwriter's inducement to its formation. 16 Pet. Rep. 495. 3 Denio, 301. It is immaterial whether a change of interest enhanced the risk or not ; it is the change which discharges the underwriter. It is analogous to a deviation in marine insurance. *Tennessee Marine and Fire Ins.*

*Co.* v. *Scott & Mudge,* 14 Mo. Rep. 46. *Walsh* v. *Homer,* 10 Mo. Rep. 6, particularly 14 and 15. 3. The contract with Morrison was only to indemnify him for any loss or damage he migh sustain, and he has sustained no loss nor damage. His only interest in the premises, at the time of the fire, was as a collateral security for the payment of his notes, and that security being still ample, he has sustained no loss whatever.

The contract is not that the assurer will pay the assured for every injury to the property which may happen by fire, but only that it will pay such loss as the assured may sustain by fire. 2 Pet. Rep. 25, particularly 48-9. *Columbus Insurance Co.* v. *Lawrence,* 2 Comstock, 210, particularly 216. 5 Barr, 183, particularly 192. *Ellmaker* v. *Franklin Insurance Co.,* 5 Pick. 34, 76. 16 Pet. 495. 1 Phil. on Ins. 1, 2, 3. 16 Wend. 385, particularly 397. 4. The defendant should have been subrogated to the plaintiff's rights in the debt and its security, to the extent of the recovery. *Carpenter* v. *The Providence U. Ins. Co.,* 16 Pet. 495. If the defendant is entitled to be subrogated to the plaintiff's stead, no judgment should go against it, for it never contracted that, in case the house were burnt, it would buy the notes secured on the land, or to advance to the plaintiff payment of notes not yet due, and which were not even in existence when the contract was made. And if it is not entitled to be subrogated, the result is, either that the plaintiff gets his debt paid twice, or his vendee has the benefit of the payment by the defendant, with whom it had no contract or privity whatever.

*F. M. Haight* and *Todd & Krum,* for respondent. 1. The conveyance of the property by Morrison to Bowman, retaining a lien for the purchase money, did not divest the interest of the former. *Howard* v. *Albany Ins. Co.,* 3 Denio, 301. Am. Law Reg. No. 1, p. 18. 7 Barbour, 570. 5 Pick. 76. ib. 19. 1 Phill. on Ins. 67, 72. 4 Mass. Rep. 330. 16 Wend. 385, 397. 6 Cow. 316. 10 Pick. 40. 13 Mass. 67. 2. Whether this is a case for subrogation or not, has nothing to do with this suit. If this right ever arises, it can only

be on payment of the money. Theobald on Principal and Surety, ch. 10, p. 186. 2 Phill. on Ins. 282. 5 Paige's Ch. Rep. 294. 2 Vt. Ch. Rep. 608. 16 Pet. Rep. 501. 3. It is no defence to this suit, that Bowman remains able to pay, or that the land on which the burnt building stood is still ample security for the debt. 3 Sumner, 141, 142.

SCOTT, Judge, delivered the opinion of the court.

This was an action on a policy of insurance against fire, on a dwelling house. The action was begun by the assured, J. S. Morrison, and he dying, the suit was prosecuted in the name of the respondent, his administrator. It is averred in the petition, that while the said policy was in full force, and before its expiration, Morrison, in consideration of the sum of sixty-six thousand one hundred and sixty-six dollars, conveyed the ground on which the insured buildings were and the buildings thereon, with other lands, to S. M. Bowman; that no part of the consideration money was paid to Morrison, but at the time of said conveyance, the said Bowman executed and delivered to Barton Bates, trustee for Morrison, a deed or reconveyance of the same premises, conditioned to pay the said Morrison the consideration money of said sale. To this petition there was a demurrer, which was overruled, and a judgment was rendered for the plaintiff. The defendant maintains, that Morrison, by his conveyance to Bowman, was divested of all interest in the subject matter of the insurance, and therefore could maintain no action on the policy; or if the transaction with Bowman did not produce that effect, it at least so changed the interest of the assured and diminished its value, as to release the underwriter.

1. The general principle is, that an absolute assignment or sale, after the insurance is made, takes away the insurable interest of the vendor, and creates a bar to the right of action on the policy, unless by some means its existence has been preserved for the benefit of the assignee. After the assured

has parted with all his interest in the property insured, he stands as though he never had any right in the subject of the insurance, and therefore cannot effect a valid policy upon it. The contract of assurance is no longer a contract of wager ; it is a contract of indemnity, and nobody can recover in respect to the loss, who is not really interested. This principle is too obvious to require a citation of authorities in its support.

2. But notwithstanding a conveyance of the subject matter of a policy, if it be in the nature of a mortgage, or in trust, with a resulting trust to the insured, so that he has an insurable interest in the property, he may, nevertheless, recover to the extent of his actual loss, provided it does not exceed the sum insured. The transfer of the property will only prevent a recovery on the policy by the assignor, so far as it deprives him of his insurable interest, without regard to the inquiry, whether the interest which remains after the assignment, be of the same nature and character as that which existed before it was made. Hence it has been held, that the owner of real estate, which he has sold after an assurance, who retains the legal title as a security for the purchase money, may maintain an action for a loss after the contract of sale. *Trumbull* v. *Portage Ins. Co.*, 12 Ohio, 305. *Stetson* v. *Massachusetts Mutual Ins. Co.*, 4 Mass. 330. In the case of *Higginson* v. *Doll*, 13 Mass. 96, it was held, that a mortgage on a vessel at the time of effecting the policy, did not deprive the assured of his insurable interest, nor of his right of recovery on the policy. In the case of *Gordon* v. *Ma. F. Ins. Co.*, 2 Pick., the vessel insured was afterwards conveyed away to others, but as the purchasers, at the time of sale, by a memorandum, promised and subsequently, by a covenant, undertook to apply the proceeds to the discharge of debts due to them from the assignor, it was held, that the right of recovery was not affected by the transaction. In the case of *Locke* v. *The N. A. Ins. Co.*, 13 Mass., the plaintiff shipped a quantity of fish for the benefit of another, to whom he was indebted, and a bill of lading was taken in the name of the creditor. The fish was

lost, and the plaintiff was permitted to recover on the policy on the fish, notwithstanding it was objected, that he had no interest. The court regarded the transaction as an assignment of property to secure the payment of a debt. So the inquiry seems to be narrowed down to the point, whether the plaintiff retained an insurable interest in the subject of the policy at the time of the loss. Had the reconveyance been made to Morrison himself, the present case would have been almost parallel with that of *Stetson* v. *Mass. Mu. Fire Ins. Co.* The conveyance and reconveyance must be regarded as one transaction, and it can make no difference in principle, whether the interest reconveyed is a legal or equitable one. Whether it was made directly to the vendor or to another in trust for him, in either event, he has the same interest in value, and they are equally insurable.

3. An important principle is involved in the inquiry, as to the duty of the owner in making disclosures of the nature, extent and value of the interest in the property on which he seeks insurance against losses by fire. Any interest in property is insurable. But what is the duty of the owner of that interest who seeks insurance upon it? Should he minutely disclose his title and all the incumbrances on the property, or should the insurer demand from him information in relation to these matters? There is no doubt that a fraudulent concealment or misrepresentation in regard to the owner's interest, to the prejudice of the underwriter, will avoid the policy. The views of the Supreme Court of the United States on this subject vary from those entertained by other tribunals, whose reputation entitles their opinion to great respect. The summary of the argument of that court is, that the contract of insurance is one in which the underwriters generally act under the representations of the assured; consequently those representations should be fair, and omit nothing which is material for the underwriters to know. Every circumstance which would increase the risk, or would induce a demand for a greater premium, should be disclosed. Insurances against fire are usually made in the

confidence that the assured will use all care to avoid the loss of the property, which his interest can suggest. The extent of this interest must always influence the underwriter in taking or rejecting the insurance, and in estimating the premium. Hence, it is necessary that he should be informed of the nature and extent of the interest for which an insurance is sought. Underwriters do not rely so much upon the principles of men as upon their interests. That the materiality of the facts concealed or of the representations made, is a matter of fact for the jury and cannot be determined as a matter of law, by the court. *Lawrence* v. *Col. Ins. Co.*, 2 Pet. 25.

This question was involved in the case of *Tyler* v. *The Ætna Ins. Co.*, 12 Wend. 507. There, a vendee, under articles of agreement to purchase the insured premises, entered into possession with a considerable portion of the purchase money unpaid. He insured the premises as his own, without disclosing the real nature of his interest in them. This was relied on as a material misrepresentation, which avoided the policy, and the case of *Lawrence* v. *The Columbus Ins. Co.*, 2 Pet. 25, was cited to show that the plaintiff could not recover. But the court maintained, that it had been deliberately settled in Massachusetts as an established principle of the law of insurance, that a *bona fide* equitable interest in property of which the legal title is in another, may be insured under the general name of property, or by a description of the thing insured, unless there be a false affirmation or representation, or a concealment after inquiry, of the true state of the property; and that the applicant need not represent the particular interest he has at the time, unless inquired of by the insurer; that the course of decisions had been upon this understanding of the law and in accordance with it, and such was apprehended to be the doctrine of the courts of England. 1 Caine's Rep. 276. 1 Johns. 385. 11 Johns. 302. 9 Wend. 409. Marshall on Ins. 682–3, 730. Phil. on Ins. 64, 94. That the nature and extent of the interest of the insured may, in some instances, be material facts in making up an estimate of the

risk and rate of premium, and upon general principles applicable to this action, a disclosure would seem to be required, but generally they cannot be so material as to justify a conclusion that they would have varied the premium paid. The necessity of disclosing the title of the applicant would greatly embarrass the operation of insurance, without affording any essential benefit to the insurers. Any error in the deduction or description of title might be fatal. The rights of the insurer are sufficiently guarded, by having it in his power to exact, by inquiry, a description of the interest of the applicant, and by the recovery being limited in case of loss to the value of the interest proved on the trial. The minuteness of the proposals and conditions, as to the description required of property to be insured, without specifying the nature or extent of the interest, affords a reasonable inference that this information is not deemed generally material and indispensable.

These views commend themselves to our judgment by their justness, and we are satisfied will effect more solid justice between the assured and the insurer, than the contrary doctrine. It cannot have escaped observation that, at first sight, many of the principles of the law of insurance are seemingly very arbitrary, and their necessity and policy can only be seen and felt by those who are called upon to give them a practical application. The man without guile, who asks for insurance on his property, is not aware of the necessity of disclosures, which long experience in insurance offices has shown to the underwriter to be necessary, and to hold his policy void for not making disclosures of the importance of which he is not aware, would be gross injustice. If applicants for insurance are to be held to a strict representation and proof of the nature and extent of their interest in property on which they apply for insurance, they will almost invariably lose the benefit of their policies. Are the liens of taxes, judgments and such like to avoid policies, unless they are disclosed, when they may be entirely out of mind and forgotten? If, from a want of the knowledge of the law, the assured mistakes the nature of his

title, although he may have one equally valuable, is his policy to be avoided? It is no answer to say that the misrepresentation must be material. What is material must be determined from the circumstances of each case. What is material in one case may not be so in another, and so a wide field for litigation will be opened. The ends of justice will be best subserved by holding the assured only responsible for fraud. Insurance companies may protect themselves by inquiries in relation to these things, and after filling their policies with so much detail and such minutiæ of information in regard to other matters, as to create the impression that they are satisfied, to hold that they are not bound by their contracts, unless information of another kind is communicated by the assured, which is not sought for, would be enabling them to commit the rankest injustice.

4. The fact that the notes given for the lot by Bowman, are still due, and the right to be subrogated to the securities of the assured, cannot be considered in this litigation. A right to be subrogated cannot arise until there is a recovery of the money against the company, if at all. There are not facts sufficient upon which any action can be founded in relation to that matter, if it could be inquired into here; nor is there any thing upon the record which shows that the damages assessed by the court are not the standard of the loss of the assured.

Judge Ryland concurring, the judgment is affirmed. Judge Gamble did not sit in the cause.