CHARLES E. CLARK *vs.* A. F. HIGGINS & another.

Suffolk.   Nov. 10, 11, 1880; March 9. — May 4, 1882.   DEVENS, J., absent.

Underwriters issued an open policy of insurance to their agents on account of whom it might concern, " as per certificates " issued, on merchandise from A. to B. by railroad and from B. to C. by steamer; and to cover such other risks as might be indorsed thereon.   The policy contained this clause : " Beginning the adventure upon the said goods and merchandises from and immediately follow-ing the loading thereof on board the said vessel at                          as aforesaid, and shall continue and endure until the said goods and merchandises shall be safely landed at                          as aforesaid." The agents issued a certificate to a person, which stated that they had entered on an open policy, referring to it by its number, and it being the one above set forth, a certain risk on cargo by a schooner from D. to E., " loss to be adjusted in conformity with the conditions of said policy." The insured had no knowledge of the existence in the policy of the clause above set forth.   *Held*, in an action for the loss of the cargo by a peril insured against, that there was no warranty that the cargo should be loaded at D.

C. ALLEN, J.   This is an action of contract against A. F. Higgins and James F. Cox, attorneys of various firms and indi-viduals, underwriters, under the name of the United States Lloyds, to recover a total loss on a cargo of potatoes, insured under a contract of insurance in this form.   The defendants is-sued an open policy, No. 16,758, to their agents, Magoun & Con-key, as follows, the written portions being printed in italics :

" At United States Lloyds, A. Foster Higgins, James F. Cox, attorneys.   By the undersigned firms and individuals, as sepa-rate underwriters, each represented by the above-named attor-neys.   *Magoun & Conkey* on account of *whom it may concern* in case of loss to be paid in funds current in the city of New York to *whom it may concern, as per certificates issued,* do make insur-ance and cause to be insured, lost or not lost, at and from *Boston*

*per railroad to Fall River, thence per Sound steamer to New York, and thence per Clyde's line to Wilmington, N. C.   On shipments of merchandise per the 'Carolina Central Despatch line,' for which Messrs. Magoun & Conkey are hereby authorized to issue our domestic certificates payable in New York by Higgins & Cox, att'ys, and of which insurance Messrs. Magoun & Conkey are to make daily reports to Higgins & Cox, att'ys.   Also to cover such other risks as may be approved by Higgins & Cox, att'ys, and indorsed hereon* — upon all kinds of lawful goods and merchandises laden or to be laden on board the good *railroad and steamer and steamer of Clyde line as above*, whereof is master for this present voyage                       or whoever else shall go for master in the said vessel, or by whatever other name or names the said vessel or the master thereof is or shall be named or called.

" Beginning the adventure upon the said goods and merchandises from and immediately following the loading thereof on board the said vessel at                       as aforesaid, and so shall continue and endure until the said goods and merchandises shall be safely landed at                       as aforesaid."

Other printed provisions followed, with blanks to be filled, as usual in policies of marine insurance.   An indorsement in the margin showed that after September 18, 1877, the policy was " to cover in the name of T. Magoun, Jr., on the conditions therein expressed."

The following certificate was issued by the defendants to the plaintiff, signed " Higgins & Co. Att'ys," and countersigned " T. Magoun, Jr." :

" No. 41.   $3000.   At the United States Lloyds by Higgins & Cox, Att'ys for all subscribers.   New York, Oct. 16, 1878. This is to certify, that we have entered, under an open policy, No. 16,758, made in the name of T. Magoun, Jr., the sum of three thousand dollars on potatoes, subject only to total loss of vessel and cargo valued at sum insured —— by the Schr. Lizzie M. Stewart at and from Charlottetown or Georgetown, P. E. I., to New York, with liberty of one or more additional United States ports, not south of Key West, paying therefor a proper additional prem.   Loss, if any, payable to the order of C. E. Clark on presentation of this certificate, and said loss to

be adjusted with the holder hereof in conformity with the conditions of said policy. This certificate is not valid unless countersigned by T. Magoun, Jr., Boston, Mass."

It appeared at the trial that the vessel arrived at Georgetown on November 4, 1878, and two days afterwards went five or six miles up a river, (at the mouth of which Georgetown is situated,) to a place called Montague Bridge, and there loaded a cargo of potatoes, proceeded down the river to Georgetown, anchored in the stream, and then went to sea; and that, while on her voyage to New York, the vessel and cargo were totally lost.

The principal question in the case is whether, under the peculiar form of contract adopted by the parties, as the vessel went to Georgetown with the potatoes on board, before starting on the voyage insured, the insurance then attached, even if Montague Bridge is not a part of the port of Georgetown.

It has been held in several cases, which are relied on by the defendants, that a policy on goods at and from a particular port, beginning the adventure upon the said goods from the loading thereof on board the said ship at said port, is a warranty that the goods shall be loaded at that particular port, and that the policy will not attach upon goods previously loaded. *Robertson* v. *French*, 4 East, 130. *Horneyer* v. *Lushington*, 15 East, 46. *Graves* v. *Marine Ins. Co.* 2 Caines, 339. *Richards* v. *Marine Ins. Co.* 3 Johns. 307. *Murray* v. *Columbian Ins. Co.* 11 Johns. 302. It has also been held that a policy on goods " at and from Gottenburgh, . . . . beginning the adventure upon the said goods from the loading thereof on board," without specifying in terms that the loading is to be at Gottenburgh, is to receive the same construction, and will not attach upon goods loaded on board before the vessel arrived at Gottenburgh. *Spitta* v. *Woodman*, 2 Taunt. 416. *Langhorn* v. *Hardy*, 4 Taunt. 628. *Mellish* v. *Allnutt*, 2 M. & S. 106. *Rickman* v. *Carstairs*, 5 B. & Ad. 651.

On the other hand, it was held by Lord Ellenborough in *Gladstone* v. *Clay*, 1 M. & S. 418, that a policy on goods " at and from Pernambuco to Maranham, beginning the adventure upon the said goods from the loading thereof on board upon the said ship, wheresoever, &c.," attached upon goods loaded on

board before the vessel reached Pernambuco. And in this Commonwealth it has been settled that a policy on goods at and from a certain port, without more, does not imply that the goods shall be loaded at that port. *Silloway* v. *Neptune Ins. Co.* 12 Gray, 73.

The plaintiff introduced evidence tending to show, as the bill of exceptions recites, that he "never saw or heard of the open policy of insurance;" which, fairly understood, may be supposed to mean that he was not aware of the particular provisions which it contained. There was no evidence tending to show that the parties came to any actual understanding or agreement together, as to where the cargo should be loaded, further than is to be inferred from the contents of the two papers themselves, which constituted the contract. It is not therefore to be assumed that it was any part of the oral agreement between the parties, that there should be a warranty that the potatoes should be loaded at Charlottetown or Georgetown. So far as the evidence goes, this assumption was negatived. For this reason, if it is essential to the construction relied on by the defendants that the blank should be filled by the insertion of the words "Charlottetown or Georgetown," the defence must fail.

While it is true that even a court of law may at the trial correct a mistake in a written contract by supplying or changing words, yet this can only be done when the mistake is obvious, and the context furnishes with certainty the means of making the correction. *Wilson* v. *Wilson*, 23 L. J. (N. S.) Ch. 697. Numerous instances may be found where courts of law have exercised this power, but it has always been for the purpose of carrying out the plain intention of the parties. Thus promissory notes or bonds have been corrected, by supplying the word "pounds," "dollars," or "hundred;" and other similar changes have been made. *Coles* v. *Hulme*, 8 B. & C. 568. *Phipps* v. *Tanner*, 5 Car. & P. 488. *Waugh* v. *Bussell*, 5 Taunt. 707. *Boyd* v. *Brotherson*, 10 Wend. 93. *Sweetser* v. *French*, 13 Met. 262, 265. *Hall* v. *Tufts*, 18 Pick. 455, 460. See also Leake Con. 225, 226, 327. In all such cases, the intention of the parties which is to be carried out must be their mutual intention. It is said that the strict rule of law is largely tempered by the doctrines and practice of the courts of equity. 2 Chit. Con.

(11th. Am. ed.) 1028. Where a contract is contained in several papers, and one party is not even aware of the existence of the clause in which the omission occurs, and the other party is aware of the existence of the clause and of the unfilled blank therein, and leaves it in that condition apparently by design, it cannot fairly be considered that either party, it certainly cannot be considered that both parties, intended that the omitted words should be supplied before the execution of the contract, but through mistake neglected to have it done. On the evidence, there can be no pretence for saying that the plaintiff in this case had any actual intention that the words "Charlottetown or Georgetown" should be inserted in the clause in the open policy now under examination, or that he intended to warrant that the cargo should be loaded at either of those ports. Under such circumstances, neither a court of equity, upon a bill filed to reform the contract, nor a court of law with its more limited powers in this respect, would be justified in adding those words to the contract. *Andrew* v. *Spurr*, 8 Allen, 412, 415, 416. *Sawyer* v. *Hovey*, 3 Allen, 331. 1 Story Eq. Jur. §§ 155, 157.

It remains to be considered whether the contract should receive the same construction in law, even without the filling of the blank, as if the words "Charlottetown or Georgetown" were supplied. It has been seen that certain policies providing that the adventure should begin "from the loading of the goods on board the said vessel," without any words giving or calling for any further description of the place of loading, would be construed to mean from the loading at the port of departure, so that the legal signification would be the same as if those words were added. The court in one case said that they felt themselves obliged to give this construction; obliged, that is, by the necessary meaning of the language used, and in the connection in which the words occurred. *Spitta* v. *Woodman, ubi supra.* In *Robertson* v. *French*, also, which did not turn upon the precise phraseology now under consideration, great stress was laid by Lord Ellenborough upon the fact that the words were incorporated with the body of the text of the printed words, and made to form therewith "one entire and continued chain of words, and one unbroken sentence of intelligible expressions all applicable to the same subject matter." In the present case, the

form is quite peculiar. The risk primarily described in the open policy is, " from Boston per railroad to Fall River, thence per Sound steamer to New York, and thence per Clyde's line to Wilmington." The goods to be insured are goods which are to be sent by a particular line. To this specially limited description is added a clause under which the present risk came, viz.: " also to cover such other risks as may be approved by Higgins & Cox, att'ys, and indorsed hereon." Then follow the general printed provisions, which certainly must receive rather a violent construction to make them applicable to goods shipped at Boston by rail, to be transferred at Fall River to any steamer for New York, and then again transferred to any steamer of a certain line for Wilmington. In an open policy, designed to be used for covering a succession of risks of that description, partly by rail and partly by different and undesignated steamers, some of the risks beginning at one place and some at another, it may well be taken for granted that the provision touching the beginning of the adventure would not be regarded as of great importance. It is not indeed apparent how the blank could well be filled in any particular case; or how, if once filled for one risk, the words could be changed by mere intendment for another risk. According to the view of the defendants, the clause must be a variable one, differing with each successive entry of a risk, and, by construction or intendment, the omission must be supplied by inserting whatever place may happen to be the port of departure for the voyage insured. But the policy also provides for insurance upon goods " laden on board the good railroad; " and it would be hardly profitable to express a conjecture as to what forms of risk would be covered by this policy on goods carried only by rail from Boston to Fall River, or to develop the various inconsistencies which will be found to exist between the general printed form of the policy, designed to be applicable to a single marine risk, and the intentions of the different parties to the various risks which are to be engrafted upon it, by provisions specially applicable to each. It is obvious that in any such case, where a mere printed framework of a contract is used, and a clause is left with a blank unfilled, it may well be found that the significance of such clause is reduced to a minimum, and that its phraseology

must yield to a slight indication of a different intention, to be found in the special provisions.

In the present case, the sentence of the clause relied on, being left incomplete, and calling for the addition of some further word or words, differs from that in *Spitta* v. *Woodman*, and other cases of that class. The collocation of the words is not such that, by reason of the sequence, the words relating to the beginning of the adventure must be held to explain and limit the words " at and from," as in *Robertson* v. *French*, and other similar cases. Here, the general printed clause contains the words which the defendants would construe into a warranty, while the provisions specially adopted by the parties for this particular risk use the more general words " at and from Charlottetown or Georgetown," which imply no warranty that the vessel shall be loaded at either port. It would have been easy to include in the certificate issued to the plaintiff words which would specially refer to and adopt the general printed clause, and make it applicable to the risk to be insured, by providing that the clause should be read, in determining the rights of the plaintiff in case of loss, as if the blank were filled by the insertion of the words " Charlottetown or Georgetown ; " but this was not done. If the defendants wished to avail themselves of so strict a provision, it is reasonable to require them to express their intention in plain terms. Inasmuch as the words which were used in the certificate have a recognized and settled legal construction, which is different from that which, according to the decisions above referred to, the printed words in the body of the contract would bear if the blank were filled by the insertion of the words " Charlottetown or Georgetown," and inasmuch as the language of the certificate is not so arranged as to form a part of one continuous sentence in connection with the language of the body of the printed form, but is superadded by a separate paper, which embodies the terms of the contract which were specially in the minds of the parties, and which does not distinctly show that the words " at and from Charlottetown or Georgetown " were designed to be qualified by anything contained elsewhere, and inasmuch as the blank in the printed form was not filled, it is more just and reasonable to hold that the general provision, so far as it would bear a different meaning from the special provision, is

superseded by the latter, than it would be to hold the plaintiff bound by a warranty which was not brought to his attention. It is, to say the least, quite as consistent with the rules of law to fill the blank by inserting the word "wheresoever," or to read the contract as if that word were inserted, as to insert words which would import a warranty of loading at a particular place. So far as can now be judged, if the attention of the parties had been called to the phraseology of the body of the policy, and the blank had been filled with reference to this risk, it might have been filled in this way; in which case *Gladstone* v. *Clay* would be an authority directly in point for the plaintiff.

If it could be shown that the plaintiff actually agreed that the blank should be filled by inserting the words "Charlottetown or Georgetown," and that the omission was through a mutual mistake, the remedy of the defendants would be in another form, by a bill in equity to reform the contract, so as to make it express the real agreement of the parties.

The plaintiff has strongly urged that *Robertson* v. *French* and other like cases should be overruled, as sanctioning an unjust rule of law. It is not necessary to determine that here. There is no doubt, according to the decided cases, that the construction of words which of themselves would require the loading to be at the port of departure for the voyage insured, may be controlled by a special memorandum, or by circumstances showing that such construction was not intended in the particular case. *Bell* v. *Hobson*, 16 East, 240.  *Carr* v. *Montefiore*, 5 B. & S. 408, 422; 33 L. J. (N. S.) Q. B. 256, 259, 260.  *Nonnen* v. *Reid*, 16 East, 176.  The view above taken is quite consistent with all the authorities, and renders it unnecessary to consider the other questions presented by the bill of exceptions.

*Exceptions overruled.*

The case was argued in November 1880, by *L. S. Dabney & H. L. Harding*, for the defendants; and by *C. T. Russell & C. T. Russell, Jr.*, for the plaintiff; and was reargued in March 1882, by the same counsel.