## Martin Durand vs. N. Thouron & Co.

*Error from Mobile Ciruit Court,*—Before the Hon. S. L. Perry.

———◆———

A. having the possession of goods, deposited with him for sale by B. effects an insurance on the contents of his store. A loss ensues—and A in a schedule of destroyed articles, includes the goods of B. and receives the whole amount of insurance. Afterwards, A. gives to B. a written memorandum, stating that he will account to B. for his pro portion of insurance when ascertained; held,

1. That A. could not show by parol testimony that he intended by the memorandum, a mere intention to account, out of what might remain after his own loss had been satisfied.

2. That A. could not retain the whole amount so received on the insurance, by alleging, that the destruction of his own goods was equal to the sum so received; but that B. could recover on his loss in proportion as the value of the policy was to the whole loss.

3. That it was not necessary to the recovery of B. that he should have instructed A. to insure his goods, when deposited, or before their destruction.

4. That one having the possession of the goods of another, may insure for the benefit of the latter, without authority in the first instance; and that the *cestui que trust,* may adopt the policy.

This action was commenced by Thouron & Co. in the court below, to recover the value of a box of laces, which had been deposited with Durand for sale. Durand had effected an insurance of the goods in his store, and the same had been destroyed by fire.

On the trial of this cause, the plaintiff below read a paper in support of his action, which was in the following words:

" *Mobile, 11th February,* 1829.

" I will account to Messrs. N. Thouron & Co. or to any agent they may appoint, for the sum that may be coming to

them, (their proportion of insurance on a box of laces, burnt    Durand
in my store on the morning of 21st October, 1827) when the       vs.
amount coming to each loser will have been ascertained.          Thouron & Co.

" M. DURAND."·

It was proved that a box of laces, the property of the plaintiffs below, had been intrusted to Durand for sale, and that they were included in the 'list of goods insured. After the loss of the goods by fire, and before the execution of the above writing, Durand received the whole amount of the policy, amounting to two thousand dollars.

The defendant below, in defence of the action, offered to prove, that Thouron & Co. had never given any instructions for insurance ; that in the settlements of various sales made previous to the fire, with the agent of the plaintiffs below, (to whom the above paper had been given,) no insurance was, charged, and that in executing the writing, it was not intended by either party as an acknowledgment of any thing being due, but as a memorandum by which the agent could settle his accounts with the house of Thouron & Co.—they residing in Philadelphia. The defendant below also offered evidence to show, that in making out his claim for insurance, he intended to secure himself for his own losses first ; that they amounted to more than two thousand dollars, and that the goods of the plaintiffs below had been included in a list made out subsequent to the fire, by advice of counsel, merely to show the extent of the loss, but not that the plaintiffs, Thouron & Co. should share *pro rata* with his own.

The court rejected the whole of this testimony, and instructed the jury, that the defendant, Durand, by the aforesaid writing, admitted that he had insured for and on account of Thouron & Co. ; that the evidence proposed by him, would controvert the import of the instrument, and was therefore improper ; and that the recovery of the plaintiffs would be proportionate as the value of the policy was to the whole loss sustained. Durand, by his counsel, requested the court to charge the jury—

Durand
vs.
Thouron & Co.

1st. That if no instructions to insure, were given by Thou-ron & Co. when the goods were deposited with Durand, or before the fire, that then the goods were not covered.

2d. That if Durand had goods of his own destroyed, exceeding the amount received by him, on account of the insurance, he was first entitled to be paid.

3d. That the writing relied on in support of the action, did not admit any proportion whatever.

4th. That if it admitted any proportion, it was only for so much as might remain after Durand had been first paid.

The court refused these instructions, and the plaintiffs, Thouron & Co. had judgment.

Durand now assigned the same as error here.

HALE, for Plaintiff.

*Hughes on Insur.* 386—16 *East.* 141—5 *Taunt.* 101—2 *Mass.* 365—2 *Cranch,* 419.

GOLDTHWAITE, *contra.*

4 *Bos. & Pul.* 283, 291, 307—13 *East,* 274—2 *Maule & Selw.* 485—2 *Peters,* 46.

By Mr. Justice SAFFOLD:

The action was assumpsit, for money had and received—brought in the Circuit Court of Mobile county, by the present defendant, against the plaintiff in error. Thouron & Co. in support of the action in the Circuit Court, read in evidence, a paper as follows: "Mobile, 11th February, 1829.—I will account to Messrs. N. Thouron & Co. or to any agent they may appoint, for the sum that may be coming to them, (their proportion of insurance on a box of laces burnt in my store on the morning of the 21st of October, 1827,) when the amount coming to each loser will have been ascertained.—Signed, M. Durand." They also read in evidence a statement drawn up by Durand for the Insurance Company, showing the amount of loss in his store, (which he used as an auc-

tion establishment) from the fire, by a schedule containing the articles consumed, and their value; and on which he relied as proof that the laces were insured. The schedule was accompanied with the affidavits usual in like cases. The whole value of the goods destroyed, as shown by the schedule, was $3196 71; among the other articles contained, was a box of laces, valued at $253 43, which was proved to have been the property of Thouron & Co., and was admitted to be the same referred to in the above recited paper, containing the promise to account for it in the proportion mentioned. And they further proved, that the Insurance Company had paid to Durand, on the policies of insurance, $2000. The defendant offered to prove that the plaintiff had never given any instruction for insurance—that in the settlement of various sales, made before the fire, with the agent of the plaintiff, A. George, no insurance was charged, and that in giving the paper relied on as containing the agreement to account, it was not intended by either him or the plaintiff, as an acknowledgment of any thing being due, but as a *memorandum*, by which said A. George could settle his accounts with the plaintiffs, they living in Philadelphia, and he being their agent here. The defendant further offered to prove, that in making out his claim for insurance, he intended to secure himself for his own losses first; that they amounted to more than two thousand dollars, and that the plaintiffs' goods were included in the list, by advice of his counsel; not with the intention of having them come in *pro rata* with his own, but to show the extent, as far as he could, of these losses. All which testimony, the court rejected; and instructed the jury, that by giving the written promise as described, the defendant admitted that he had insured for and on account of the plaintiffs; also instructed them, that the amount of the plaintiffs' recovery should be in the proportion of the two thousand dollars to the whole amount proved in the schedule.

The counsel for the defendant below, also requested the court to instruct the jury,—

31

Durand
vs.
Thouron &Co.

1st. That if no instructions to insure, were given by Thouron & Co. when the goods were deposited or before the fire, that then the goods were not covered.

2d. That if Durand had more than two thousend dollars burnt, he was first entitled to be paid.

3d. That the paper relied on did not admit any proportion whatever.

4th. That if it admitted any proportion, it was only for so much as might remain after Durand had been first paid.

All these instructions the court refused to give.

The rejection of the parol evidence, and the refusal of the court to instruct the jury as above requested, and instructing differently, is the cause assigned for error.

As respects the rejection of the evidence, it may be observed, that the object of offering it, must have been for the purpose of varying, explaining, or contradicting the written evidence, which had been introduced by the plaintiff. That parol proof is inadmissible to alter or contradict written contracts or agreements, is one of the most valuable and best established general rules of evidence. It is true, there are some exceptions to it, as in the case of receipts and other particular circumstances of accident, mistake or fraud ; but no such circumstances appear in this case, to justify an exception to, or departure from, the general rule.

The schedule of goods claimed to have been insured, made out for the purpose of demanding the insurance, and containing, among various other articles, the laces in question, was admitted and sworn to by Durand himself, as being just and correct, in November, 1827. Afterwards, in February, 1829, he signs a written agreement to account to Thouron & Co. the plaintiffs, for their proportion of the insurance, in the terms of the instrument first given in evidence. Then on trial he would resist the force of his written promise by parol evidence—that in giving the former, " it was not intended by either him or the plaintiffs, as an acknowledgment that any

thing was due, but that it was intended as a memorandum for other purposes."

The other parol evidence offered, respecting the written promise, was all of a similar nature, connected with the proposition quoted, and dependent on the same principle. The proof offered respecting the *motive* in preparing the schedule, had the sanction of but little plausibility, and less materiality; his true motives may have been concealed within his own breast, and may have been different from those indicated by his conduct; but he must be bound by his acts and declarations, which are less equivocal than his secret intentions.— There could have been no propriety in including in the schedule of his demand on the insurers, articles which had not been insured; and after having thus solemnly declared them to have been insured, even on a valued policy, and received the insurance, he was estopped to deny it. The fact, that in this, he acted on the advice of counsel, cannot vary the case. To the admissibility of the proof, that the plaintiff had given no instructions for the insurance, and that in the settlement with his agent for other sales previous to the fire, no insurance was charged, there would appear to have been no legal objections, had the same been material, and separately relied on: but such does not appear to have been the case. The court below, seems to have placed the right to recover on the ground alone, that the defendant's written promise to account, contained an admission, that he had insured for and on account of the plaintiffs. I am therefore of opinion, there was no error in the rejection of the evidence. The propriety of refusing the instructions to the jury, as requested, and of giving the contrary as stated, depends upon the force and effect of the written evidence, and the law applicable thereto. It is the province of the court to determine the legal effect of written agreements. Then what is the true construction of the defendant's undertaking of the 11th February, 1829? Does it admit any insurance for the benefit of the plaintiffs, and promise to pay any thing on account thereof? The pro-

Durand
vs.
Thouron & Co.

mise is conceived to amount in substance to this—that he would account to the plaintiffs for such sum as should be found to be the just proportion of the insurance on the laces consumed, when the amount due to each loser should be ascertained. When analysed and disincumbered of time, place, and parenthesis, this is the simple form of the promise, and I think, implies an admission, that he the defendant, had insured the laces; and expresses an agreement, that he would be answerable to the plaintiffs for such portion of the value of the laces, as should be equal to the proportion accruing to each loser, out of the amount of insurance received, or to be received, on account of all. The sum received having been proved to be two thousand dollars, and the whole amount of losses, (including the plaintiffs') three thousand one hundred and ninety six dollars seventy-one cents. The requisite *data* was furnished for computing the sums due to each loser.

From this view of the case, it results, that there was no error, either in giving or refusing instructions, as stated, unless the objection can be sustained, that in as much as there was no authority given for the insurance, and the other goods lost were of greater value than the amount of the policy, the defendant's promise to pay on account thereof was *nudum pactum*, and created no legal obligation.

On this point the counsel have referred to various authorities on each side. For the plaintiffs in error, has been cited the case of *Grant, et al.* vs. *Hill.*[a] There the defendant had effected an insurance for his own benefit, on goods which he he had obtained by means of a bill of lading, indorsed to him after the bankrupty of the proprietor, and afterwards brought suit against the writers, alleging that the assignees of the bankrupt were entitled to the interest; and recovered accordingly. Under these circumstances, the assignees brought the action of assumpsit, against Hill, for money had and received. *Mansfield*, Chief Justice, in delivering the opinion of the court, maintained, that Hill could not be converted into an agent or trustee for the assignees, or in any way be consider-

[a] 4 Taunt.380

ed as having recovered for their benefit, so as to warrant a    Durand
recovery against him at the suit of the assignees.    That if a    vs.
                                                   Thouron & Co.
man make an insurance in the name of another, upon a subject in which he has *no pretence or claim or interest*, he could not see how that could be made the ground of a recovery against him, by the person in whose name the insurance was made, the recovery having been had without consideration.

In the case of *Parks, et al. vs. The General Insurance Company*,[a] the question was presented, what was an insurable interest in goods—a sufficient description of that interest—and what the extent of the right of recovery ? An insurance had been effected by the plaintiff upon goods in his store, said to have been by him held in trust—" he represented that he was in the habit of receiving goods for sale, and making advances upon them, and that he wished to obtain insurance upon them to secure himself against loss by fire, as the consignors might not be able to repay the advances. It was held, that construing the policy and representation together, the insurance in that case, attached to goods received by the plaintiff as consignee, but it covered only the interest in them, and not that of the consignors.

[a] 5 Picker. 34.

In *Graves vs. Boston Marine Insurance Company*,[b] the principle was recognised, that a policy in the name of *one* joint owner " as properly may appear," without any clause stating the insurance to be for the benefit of all concerned, does not cover the interest of another joint owner.

[b] 2 Cranch 419

These cases sustained the principles for which the counsel for the plaintiffs mainly contends, that if one effect an insurance, and in the event of a loss, receive the money on goods, in which he had *no interest*, his wrongful recovery or receipt of the money, does not give the true owners a right of action against him, and that one having a qualified interest in goods, as consignee, for instance on account of his commissions, or money advanced, and *insuring his own interest only*, may recover accordingly without securing the interest of the

Durand
vs.
Thouron & Co.

consignors, or any others jointly concerned who are not embraced, either generally or specially, by the terms of the policy. The establishment of these principles, in the absence of any special undertaking on the part of Durand, or of evidence that the interest of the plaintiffs, as well as his own interest, was insured, would have been sufficient to exonerate him from any liability under the other facts of the case. But here, not·withstanding there appears to have been other goods in the store of greater amount than the value of the policies, he has admitted by his schedule, and in the most solemn manner, that Thouron & Co's. goods were equally insured, and it was on these, no less than any others, according to value, that the insurance was effected ; and stopping not here, he proceeds further to the act which I think most essentially distinguishes this case, in principle and in fact, from any relied on in his defence. Fifteen months after the loss had occurred, and nearly as long after preparing his schedule, when it must be presumed he had made himself familiar with all the circumstances, he executes to the agent of Thouron & Co. an instrument, repeating his admission that their goods had been included in the insurance ; and expressly promising to account to them, in the same proportion that other losers were to be remunerated from the insurance. It cannot be known that the Insurance Company would have voluntarily paid, or that the two thousand dollars could have been recovered against them, had not the goods of Thouron & Co. been included in the schedule ; and we know not how many other articles belonging to other persons, and held by Durand in the same manner, might have been also included in the schedule. Though this was a valued policy, the insurers might, for aught that appears, have successfully contested the validity of the policy, had these not been included, on the ground of fraud or misrepresentation, in respect to the value or interest. At any rate Durand seems to have thought it more safe to include them as part of the insured articles ; and having

done so and received the insurance, there was a moral obli- <span>Watson<br>vs.<br>Dale.</span>
gation sufficient to sustain his promise.

As contended on the part of the defendants in error, the law
seems to be settled, that " an insurance effected for the bene-
fit of a third person, although without his authority or sanc-
tion, may be adopted by the person for whose benefit it was
made."[a]  If where it does not appear from the policy that [a] Hughes on
the interest of such third person was insured, the effect of such <sup>Ins. 41.</sup>
adoption be contested and denied, as in the case of *Grant, et
al.* vs. *Hill*, the difficulty must vanish, when it appears, as in
this case, that the adoption was by the mutual consent of the
person insuring and the third person, and the agreement writ-
ten and signed by the former.—(See also, *Hagerdon* vs. *Oli-
verson*[b]—*Shuna* vs. *Crawford.*[c])  Hence, we are unanimous [b] 2 Maul. &
in the opinion, that there was no error either in rejecting the <sup>Sel. 485.</sup>
evidence offered, in giving the instructions to the jury as was [c] 2 New R.283<br>291, 307----1<br>Pet. 162.
done, or in refusing the contrary instructions requested ; and
that the judgment must be affirmed.