## MERCHANTS' INSURANCE CO. AND DEAS *vs.* MAZANGE.

1. Where a lessee covenants to erect on the leasehold premises a building worth a specified sum, and to keep the premises insured, and after the building is erected the builder obtains a decree in a court of chancery upon his contract of building, under which decree he enters into possession of the premises, without a sale, his possession is unauthorized and permissive only, and does not make him an assignee of the lease, so as to render him liable on the covenants contained in it.

2. And if the builder, while thus in possession, insures the premises to the extent of his interest in the lease, the policy does not enure to the benefit of the lessor or his assigns, nor does it make the builder liable on the covenant of insurance contained in the lease.

3. A decree of sale in a court of chancery, under a builder's lien, does not invest the complainant with a right of entry, nor invest him with the legal title; and until a privity is created by the purchase of the leasehold estate, a court of equity will not compel him to take an assignment of the lease, so as to render him responsible on the covenants contained in it.

ERROR to the Chancery Court of Mobile.
Heard before the Hon. J. W. LESESNE.

This was a BILL, filed by Ovid Mazange against the plaintiffs in error, to recover the amount of a policy of insurance effected by Deas with the Merchants' Insurance Co., to the extent of four thousand dollars, upon a certain brick building in the city of Mobile, known as "The Republic." The language of the policy is, that the Company "insure James S. Deas against loss or damage by fire to the amount of four thousand dollars," &c., on said property, which is particularly described, "and do hereby promise and agree, to make good unto the said insured, his executors, administrators and assigns, all such loss or damage, not exceeding the amount insured, as shall happen to the property above specified during one year, to-wit: from the 18th May, 1849, to the 18th May, 1850;" and after inserting the usual exceptions to their liability, arising out of the manner in which the loss may accrue, it is provided that the interest of the insured in the policy is not assignable, but by the consent of the Company manifested in writing, "and in any case of transfer or termination of the

interest of the insured, either by sale or otherwise, without such consent, this policy shall from thenceforth be void and of no effect."

The building mentioned in the policy was consumed by fire, on the 22d day of August, 1849.

Mazange, the complainant in the court below, insists that he is entitled to the benefit of this policy, and the following are substantially the facts upon which he rests his claim:

That M. D. Eslava, being the owner of the lot on which the insured building was erected, agreed, on the 6th of September, 1844, to lease it to P. Chantron, for the term of six years, commencing from the 1st of November, 1844: and in consideration of said lease, Chantron agreed to put up a building on it of the value of $6000, and to deliver it back to Eslava at the end of the term in good repair. The lease was, however, not reduced to writing until the 30th of January. 1845. It recites, "that, in consideration of the erection of a certain building built by the said Chantron, and now almost completed, on a lot of ground the property of the said M. D. Eslava; and in consideration of the stipulations and agreements hereinafter contained, and to be done and performed by the said Chantron, the said Eslava, party of the first part, hath demised, leased and to farm let unto the said P. Chantron, and his heirs, executors, administrators and assigns, a certain parcel of ground," &c. Chantron covenanted for himself, his heirs, executors, administrators and assigns, to and with Eslava, his heirs, executors, administrators and assigns, forthwith to cause to be completed and finished off the brick building of the dimensions and according to the plan projected for the same, and according to his present contracts for the completion thereof, and to keep the same in good tenantable order and repair, &c. Chantron further covenants, but without inserting "his (Chantron's) assigns," with Eslava, his administrators and assigns, that he will fully pay and discharge, out of his own money, all taxes, assessments, &c., on the property during the term, &c.; "and doth further covenant and agree, that for the mutual protection of the parties, he, the said Chantron, shall, during the whole term of the demise and annually, cause insurance to be effected against fire, whereby the said improvements shall be kept constantly

insured for the sum of six thousand dollars, the premiums for which insurance are to be paid by said Chantron; and which insurance shall be so stipulated, that in the event the said premises shall be destroyed by fire, the insurance money shall remain on deposit with the insurers, and actually be drawn only in payment of re-building or repairs, or the insurers shall re-build or repair themselves, so as to secure the actual application of the money to the actual re-building and repairing of the loss, and it shall not pass into other hands, nor be diverted from that object, nor be received by either of the parties to this lease."

On the 7th of February, 1849, Eslava sold and conveyed the premises so leased to Mazange, the complainant.

It further appears, that Deas, the party who effected the insurance, entered into a contract with Chantron, the lessee, on the 6th day of September, 1844, to erect the brick building on the lot which Chantron bound himself in in the lease to cause to be erected. This contract was duly recorded, so as to create a lien upon the leasehold interest of Chantron under the act of 1834, (Clay's Dig. 375,) for the amount due from Chantron to Deas, the builder, which was $5,600.

On the 15th day of February, 1845, Chantron assigned the lease which he had obtained from Eslava, to A. S. Dumee, for the security of certain creditors named in the assignment.

Deas proceeded to complete the building, and afterwards filed his bill in equity against Chantron, Dumee and the beneficiaries under the assignment, to have his lien declared paramount to the assignment to Dumee, and to have an account of the amount due him, and a sale of the premises to pay such amount, unless the same should be paid by defendants. The Chancellor decreed in accordance with the prayer of the bill, which decree was afterwards affirmed by this court on appeal. See 14 Ala. 33.

The record further shows, that after this decree was obtained by Deas, and before any sale was effected under it, by an understanding between Deas and parties interested in the trust assignment, it was consented between them that Dumee, the trustee, in order to try the market and see whether the leasehold interest of Chantron would sell for more than would

satisfy the prior lien of Deas, and to close the trust, the interest should be sold under the assignment. A sale was accordingly made on the 28th day of May, 1848, at which T. A. Hamilton bid the sum of $500, as the agent of Deas; but no money was paid, nor any deed executed, but the sale, as before stated, was regarded as a mere means of testing the market.

After this sale, the key of the building was delivered to Hamilton, who was acting as attorney for Deas, and Deas entered into possession, and held the same, as he answers, as a means of satisfying, so far as the rents might go, the amount due him under his building contract, and was in possession when he insured, and when the building was consumed by fire.

Shortly after the loss, Deas applied to the insurance office, notifying them of his interest, and setting forth the claim of the lessor to the money, on the alleged ground of his liability to perform the covenants contained in the lease, but denying such liability; also, that he held it under his lien as a builder; that $4,500 was due him from Chantron, his gas fixtures upon the premises were worth $800, and the unexpired term of the lease to which his lien attached was worth $1000.

A cross bill was filed by Deas, but the view taken of the case renders it immaterial to notice it.

The foregoing are substantially the facts of the case. The Chancellor was of opinion, and so decreed, that Mazange was entitled to the full amount insured by the policy, and interest on that sum.

This decree is assigned for error in this court.

CAMPBELL & HAMILTON, for plaintiffs in error:

Mr. Campbell, of counsel for the Merchants' Insurance Co., and Mr. Hamilton, of counsel for Deas, insisted:

1. That the policy of insurance having been made in favor of Deas, and being applicable alone to the interest which he had in the premises, the Insurance Company is not responsible for any other loss, than that incurred by him. Its contract is, to indemnify him, and him alone, from damage by fire; and no claim for a loss is good, but that founded on his interest. The interest of Mazange was not placed before the

Company, nor was it insured; he has no title to recover, except to the value of Deas's insurable interest. 2 Cranch 419; 8 Wend. 144; 5 Pick. 34; 5 Wend. 541; 11 Johns. 302; 8 Metcalf 348; 1 ib. 17; 1 Porter 238.

2. Deas was not bound to insure by the covenants of the lease, upon the supposition that he is an assignee. The covenant to insure does not run with the land; and the assignee, not being mentioned in the covenant, is not held to its performance. Smith's Leading Cases 75; 5 B. & A. 1.

3. Deas is not the assignee of the term, and neither is he liable as the owner of Chantron's estate. He had no conveyance from Chantron, and none from Montandon & Co. Without a legal instrument, giving him the entire legal estate, he is not an assignee. 1 Bacon's Abr. 383; 2 Greenleaf's Cruise's Dig. 122; 14 Ohio R. 606; 5 Espinasse R. 105; 1 Vesey sr. 56; 1 Salk. 81, and note; Douglass 167, note; 4 Vermont 471; 10 Adol. & El. 135, (59 E. C. L. R.;) 12 Wend. 555; Platt on Covenants 482.

4. The conveyance from Dumee was never executed, and consequently his estate was never transferred. Also, there was no sale to Deas; he paid Dumee nothing, and contracted to pay him nothing. Dumee was only authorized to sell what he had for a price; if he obtained no price, there could be no sale. He could not sell, to be credited on Deas's debt. The evidence shows, that the auction of the interest was only with a view to try the market, and to be able to report that the lien was without value. Deas could not defend himself against Chantron, by this pretended purchase, in the event he should make more of the property than $500. He would be required to credit Chantron with whatever he might receive on account of this property. The contract of purchase, supposing it to amount to a contract, is unexecuted, and at law Deas cannot be held.

5. Deas is not an assignee, by the facts contained in the case of Deas v. Montandon & Co. 14 Ala. 33. The bill there was filed to set up and enforce an equitable lien. The object of the bill was, to enforce that lien by a sale of the property embraced in the lease. It did not pray for the execution of an assignment of the lease, nor that the plaintiff should be allowed to enter into posession. The plaintiff did not attempt

to obtain a legal conveyance of the term, nor did the court vest the term in Deas. The decree was never executed; nor was there a final decree ascertaining the debt at this time, and ordering a sale. The case rested merely upon a decree affirming the equities of Deas.

6. The facts do not constitute Deas such an assignee as a court of chancery would bind. The bill does not seek to compel him to receive an assignment, nor is it framed upon the equitable facts. It charges him as bound by the covenants at law, and claims the insurance money on the averment that he is insolvent. He would not, therefore, fall within the purview of the cases. 3 Bro. C. C. 166; 1 Vesey, jr., 235.

7. The cases which directed the conclusions of the Chancellor have been overruled. 8 Simon 508; 2 Phillips 718.

8. The conclusions of the Chancellor upon the subject of interest are clearly wrong. 4 Metcalf 1; 9 Wheat. 739, 871. The prayer of the bill is, that the Company should "hold the money until the final determination of this case;" and the injunction issues conformably to the prayer. The covenant also required the money to remain on deposit, and to be drawn as wanted. The Company is in no default. The delay in payment is the result of the plaintiff's own act, and he is not entitled to be paid for causing it.

GEO. N. STEWART, contra:

Mr. Stewart, of counsel for Mazange, made the following points:

1. The covenant to insure and apply the insurance money to re-build, runs with the land, since the lease required that the money should be expended on the land and applied to repair. Platt on Covenants, ch. 5 p. 183; 7 E. C. L. R. 1; 3 Campbell's R. 134. Whether the assignee is bound or not, depends upon the nature of the thing to be performed, and not on the word "assigns" being used. 17 Wend. 136; 3 Harr. 338; 4 Paige 510; 6 Bing. 644; 19 E. C. L. R. 188; 2 Lomax' Dig. 254; 9 B. & C. 505; Smith's Leading Cases, (33 Law Lib.) 81; 1 B. & C. 410; 10 Mod. 158; 6 Cowen 302; 1 Wash. C. C. R. 375; Comyn on Landlord and Tenant 61, 131, 144, 145, (or, 107, 233, 257, 259.) The rule in Spencer's case is practically overruled in many of the cases; it is

not held at this day. The covenant here is really a covenant for rent, and rent always runs with the land; so, a covenant, as in this case, to keep in repair and deliver the property at the end of the term with the building in good repair, always runs with the land. Platt on Cov. 188; Archbold's Landlord and Tenant 174.

2. Deas was bound to insure and repair according to the covenants. We are not now in a court of law, nor. are we treating of legal rights; neither does the bill seek to compel Deas to accept an assignment of the lease, so that he may be sued in covenant at law. The authorities, therefore, which apply in those cases, are not applicable here. It is immaterial to us whether Deas is an assignee or an under lessee. Equity goes much farther than courts of law to reach rent, from the party who has enjoyed the possession. 33 Law Lib. 106–8; 7 Petersdorf's Abr. 60, (94;) 1 Vernon 165; ib. 87; Crabb 155, (207.) We claim to enforce the obligation for rent, only while Deas held possession; the breach was during that time. 3 Saund. 181; ib. 240; 1 H. Black. 443; 4 Term Rep. 94; 6 Law Lib. 140 to 145. Rent may consist of any thing which lies in render;—money, services, labor, improvements, &c. Crabb's Real Prop. 128, (53 Law Lib. 167.) The obligation to pay rent arises from privity of contract, or from privity of estate; privity of legal estate at law, and privity of equitable estate in equity. 54 Law Lib. 207; 6 ib. 144 to 151; Platt on Cov. 491–2. In this case, Deas was in possession, claiming the profits to his own use, and claiming all the title under the lease so long as he held it. He had a right to the possession and profits, paramount to Chautron, Dumee, Montandon and Eslava; he held by his own acts, in defiance of Eslava, and without his will, assent or choice. He held in one of three rights, viz: under his building lien, or as purchaser of the whole lease at the sale made by Dumee, or under the decree obtained by him in chancery. It is immaterial which position he assumes, as his possession is in each case under the lease, and limited by it. His own choice of position is, that he held under his building lien; this makes him a mortgagee in possession after the law day has passed, and as such liable for the rents, services and covenants of the lease accruing during his possession. 2 Doug. 460; Platt on Cov.

117, 216, 218; 3 Saund. 181; Crabb on Real Property 207; 53 Law Lib. 155.

3. But the question is not whether Deas was bound by the covenant to insure; but it is, whether after having performed the covenant, and thus admitted it, he shall be permitted to collude with the insurance office, and repudiate his own act. The policy was taken out by Deas, for the purpose of indemnifying himself, as assignee of the leasehold estate, against an acknowledged legal liability to Mazange; and he did not think of disputing this liability, until after a loss occurred. The bill charges that the insurance was effected solely in view of the obligation of the lease, and Deas does not deny the allegation, nor does he pretend that it was made to secure his own interest. Mazange relied on the insurance as being made in pursuance of the obligation of the lease, and Deas also admits this in his answer. That the insurance was not for a sufficient sum, does not alter its character; a part insurance might be made in one office, and the residue in another office. The law does not allow a party to induce another to believe a thing complied with, and afterwards deny it, when his adversary has rested secure on the belief thus created. 1 Ry. & Moo. 343; 1 Car. & P. 246; 12 E. C. L. R. 112; Platt on Cov. 189.

4. The Insurance Company is bound to respond to the loss to the extent of the policy. They are certainly liable to the extent of the policy, having received the premium. In deciding that Deas is liable, it is also decided that the Company is liable. Where one who is liable to another makes insurance, he is entitled to the indemnity as for a loss of his own. It is on this principle that where a mortgagor insures, although the mortgage is for the full value of the land, he can recover the whole insurance money, because he is bound for the debt. 16 Peters 501. And chancery will subject the money to the payment of the debt due to the mortgagee, where the property is not of value sufficient. 6 Gill & John. 372; 2 Story's Eq. 905, 906, 907.

5. Deas can set up no claim for his individual loss of furniture or fixtures. He made no insurance on them, but on the building only. As the amount of the policy is not sufficient to protect Mazange, whom Deas was bound to protect, the entire fund must be applied for his benefit only.

6. The Chancellor properly allowed interest accruing from the commencement of the suit. Where the defendant denies and controverts the complainant's claim, he is chargeable with interest. The Insurance Company has had the use of the money, and it makes no difference to them whether they pay it to Deas or Mazange. They have not paid or brought the money into court, as they might have done.

CHILTON, J.—The view which we take of this case renders it unnecessary for us to inquire, whether the covenant contained in the lease from Eslava to Chantron, that the latter would cause the premises to be insured against loss by fire, &c., was a covenant merely personal or collateral, or whether it runs with the land, so as to be binding upon the assignee of the covenantee.

After a full investigation of the authorities, we have arrived at the conclusion, that Deas does not occupy the position of an assignee of Chantron, and cannot, therefore, be chargeable with the burthens imposed upon him by the demise.

Without questioning the authority of those cases which countenance the idea, that the mortgagee in possession after the law day may be regarded as the assignee of the lease, it is very clear to our minds, that Deas cannot be regarded in this light; for he has no assignment of the legal title, but a mere right in equity to the proceeds of the sale; or rather, so much of the proceeds of the sale of Chantron's unexpired term as shall be required to satisfy the amount due him as ascertained by the decree of the Chancery Court. This decree conferred upon him no right whatever to take possession of the premises, and as he acquired no title under the formal or nominal sale made by Dumee, his possession, at most, was merely permissive.

The statute confers upon the master-builder or mechanic, who has expended labor or materials in putting up or erecting buildings, a lien in the nature of a mortgage upon the lot and buildings thereon erected, provided the contract be in writing and recorded. Clay's Dig. 375.

We need not stop to inquire whether, under this statute, the mechanic could have a strict foreclosure, as in case of a

mortgage proper, and the effect of such foreclosure, in transferring the burthens of the covenants contained in the demise to the party who should come into the possession under the decree of foreclosure. In this case, the decree was for a sale of the premises, and until such sale was effected, the title to the leasehold estate remained unchanged.

If the parties had desired that some one should be placed in possession, charged with the performance of the covenants contained in the lease, they should have caused the sale to be made: and if they failed to do this, but remained passive, permitting Deas to hold the premises, without any assignment, or right to occupy, other than by their permission, they virtually consent to waive his liability.

Again; as a general rule, mutuality is an essential element in every contract. Where the covenant of one party forms the consideration for the covenant of the other, both parties must be bound, or neither can be held to performance. Chitty on Con. 4; 2 T. R. 653; Comyn on Con. 2. Tested by this plain elementary principle of law, it is obvious that Deas cannot be held to the performance of the covenants contained in this demise, as, in the event of a violation of the agreement on the part of Eslava, he could have no recourse whatever against him on the covenants. Suppose, for example, that there had been a failure of title, against which the demise contains an implicit covenant. It is clear, that as the only claim which Deas had, was to have the leasehold interest which Chantron had in the land sold and the proceeds paid to him, there was no such privity between him and the lessor as would enable him to maintain an action for the breach of such implied warranty. To hold him bound, therefore, as an assignee, would be to impose upon him the burthens of the covenant, and at the same time to withhold from him its benefits.

It is, however, well settled upon authority, that in cases where the party has a mere equitable lien on the premises for a demand due him, he is not subject to the covenants of the lease, and that equity will not compel him to take an assignment, so as to be liable at law. A different doctrine was at one time held by Lord Thurlow, in Lucas v. Commerford, 3 Bro. C. R. 166, and which was followed by Flight v. Bently,

7 Simons 149; but the contrary doctrine was asserted in Moores v. Choate, 8 Simons 508, by the Vice Chancellor, (Sir L. Shadwell,) who delivered the opinion in Flight v. Bently, and who said that it could not be supported, and that he did not know how it came to be made in the manner in which it appears in the report.

In the case of Jenks v. Portman, 1 Keene 436, decided so late as 1836, Lord Langdale, Master of the Rolls, after reviewing the cases, said: "It does not appear to me that a mortgagee by assignment of a leasehold interest taking actual possession of the mortgaged property, is more important in equity than it is in law."

In Arkwright v. Colt, 2 Yo. & Coll. C. C. 4, the Vice Chancellor (Bruce) said, he was willing to consider Colt, the defendant, as entering as equitable tenant for life of the benefit of the lease, and he apprehended, that by his entering into possession in that character, he did not become liable to the landlord in respect of the covenants in the lease.

In Moore v. Greg, 2 Phillips C. R. 717, it was held by Lord Chancellor Cottenham, that an equitable mortgagee by deposit of a lease is not compellable in equity, at the suit of the lessor, to take a legal assignment of the lease, although he had entered upon the premises and paid rent. This case expressly overrules the case of Lucas v. Commerford, supra, and is a stronger case for the plaintiff than the one before us. In that case, as in this, the party could not have been sued at law; there was no assignment of the lease, but the court refused its aid to compel him to take an assignment, so that the lessor might look to him for the fulfilment of the covenants contained in the lease. In the case before us, the rights of Deas accruing under his equitable lien have been adjudicated. The parties interested were before the court, and the leasehold interest of Chantron was decreed to be sold; and no effort has been made to compel Deas to take an assignment of the lease.

We think it clear, that there is no such privity between Deas and the lessor, or his assignee, as will enable the latter to look to him upon the covenants; and this, we think, is the result of the authorities above cited.

But it is contended by the counsel for the defendant in er-

ror, that Deas has complied with the covenant to insure, and this bill is merely to enable the plaintiff below to avail himself of that compliance.

It is a sufficient answer to this position, that the record before us does not sustain it. Deas merely insured his own interest against loss by fire. The insurance is upon four thousand dollars in value, and not upon six thousand, as provided for in the lease; so that, to hold the Company bound to respond beyond the interest of Deas, is to make another and different contract from that which they have entered into, while, at the same time, we should give to the statute conferring a lien upon the lot and premises, an operation far beyond that designed by the legislature, or intended by the parties.

The policy is made directly to Deas—secures him against loss to the extent of $4000; and the rule is well settled, that his insurable interest must form the basis of his recovery. Beyond this he cannot go. See upon this point, Durand v. Thornton & Co., 1 Porter 238; Graves v. The Boston Marine Insurance Co., 2 Cranch 419; Parks et al. v. The General Insurance Co., 5 Pick. 34; 1 Met. 16; 8 ib. 348; 11 John. 302; 8 Wend. 144.

It results from what we have said, that the Chancellor mistook the law in decreeing in favor of the defendant in error. His decree is consequently reversed, and a decree will be here rendered dismissing the bill. Let the plaintiff in error recover the cost of this court, and of the court below.

Note.—This opinion was delivered at the June term, 1852; but on petition for a rehearing by defendant's counsel, it was withdrawn, and at the January term, 1853, the following additional opinion was pronounced:

Per Curiam.—We have given to the argument prepared by the counsel for the defendant in error on the petition for a rehearing, as well as to the opinion of the Chancellor which has been furnished us, a careful consideration; and a re-examination of the case has the more strongly confirmed us in the correctness of the opinion delivered at the last term.

In order to make Deas liable, it is necessary to establish, either that he is the assignee of the whole term, (Holford v.

Hatch, Doug. 182; 4 Cruise's Dig. 455; 4 Kent's Com. 96; 2 Lomax' Dig. 254;) or that he occupies such a position to the leasehold estate, that equity would compel him to take an assignment, the effect of which would be, to require him to respond for any breach of the stipulations contained in the lease from Eslava to Chantron. It is not pretended that Deas is in fact the assignee of the whole term, and the only question is, therefore, as to the position he occupies in relation to it.

As to the decree of sale upon the building contract, it may be remarked, that although the contract was in the "nature of a mortgage," it conferred no right of entry; it did not invest Deas with the legal title, as would be the effect of a mortgage proper; it simply, under the decree which was rendered, gave him the right to sell under the direction of the Court of Chancery, and to obtain satisfaction of his debt out of the proceeds. The lien was the creature of a statute, which was enacted solely for the purpose of affording to the builder what was deemed a just security for the expenditure of his capital or labor; and neither the lien, nor the decree, of itself created any privity of estate so far as Deas was concerned; and until a privity was created by the purchase of the leasehold estate, a court of equity would not have required him to take an assignment of the lease, so as to become responsible for the covenants contained in it. There was, however, no sale under the decree, and as neither the contract nor the decree rendered upon it authorized Deas to take possession of the premises, his possession, if taken under either, was unauthorized, and, as we have said in the opinion, "permissive" merely.

In relation to the sale made by Dumee, it is apparent from the evidence of both Hamilton and Dumee, that it was made solely for the purpose of trying the market, with a view to closing the assignment made by Chantron to Dumee. The evidence also leads us to the conclusion, that the bid made by Deas was in connection with that object. Dumee represented the creditors in the deed of trust, and the estate was offered in order to ascertain if there would be any surplus, after discharging the lien of Deas, to apply to the trusts of the assignment. The offer was, in effect, of the interest in the es-

tate after the satisfaction of the superior lien; and upon the understanding as alleged in the answer of Deas, and as proved by Dumee, the transaction could not be regarded as a sale of the estate to the former. No money was paid, nor, as Dumee swears, was to be paid by Deas upon his bid; no conveyance was executed or demanded, and the entry was made, as the answer asserts, without opposition, and with the intention of appropriating the profits of the term to the satisfaction of his claim against the property. This entry was, as we have seen, unauthorized, and made by the party under a misconception of his rights; but as he could at any time have been turned out by the Court of Chancery, which, until its decree had been executed, had the premises under its control, he could not be regarded as having, by such an entry, acquired a right to the whole of the term; and unless he had, the burthens of the covenants would not have been imposed on him.

As to the insurance, we think it clear, that if Deas, without being in fact liable, took out the policy simply as a precautionary measure upon his interest in the premises, this fact would not render him liable. He surely could provide against a contingency which might result to his prejudice, without compromitting his rights in the matter. His supposed liability involved a question of law confessedly not free from difficulty; and neither upon principle nor authority can we hold, that, because he provided a fund to meet a possible loss, he thereby should be deemed as consenting to such loss, and estopped from denying his liability.

The motion for a rehearing must be denied.