## Snow *v.* Carr.

*Action for Money had and received.*

1. *Insurance; policy of, construed.*—A policy taken out by 'piano and
music dealers, against loss by fire, describing the property as "*their own or
held in trust*," will, in the absence of evidence to the contrary, cover a piano
left with them for sale or rent; but oral evidence is admissible to show what
goods were intended to be, and were insured under the general words of
the policy.

2. *Same; what evidence admissible to show contents of.*—In action against
the insured for money had and received, by one who claimed that his goods
were covered by the policies of insurance, the amount of which the insured
had collected, secondary evidence may be given of the contents and terms
of the policies, where they have been cancelled, and returned to the insurer
in a foreign country.

3. *General exception; when unavailing.*—A general exception to the en-
tire charge of the court, enunciating separable and distinct propositions of
law, will be unavailing, if any one of its separate propositions is correct.

4. *Insurance money, right to share in; what does not forfeit.*—One who
effected insurance covering his own and other goods stored with him, and
collected the amount of the policy on the happening of the loss, can not de-
feat an action by the owner of such goods for his share of the insurance
money, because such owner never requested any insurance and did not
know that it was taken out until after the loss, and failed to ratify expressly,
or otherwise, the acts of the warehouseman in taking out the policy, before
the payment of the loss.

5. *Same.*—In such case the insured holds the amount collected as trustee
for the owner of such goods as well as those held in his own right, and the
failure to make proof of loss of the goods of other persons, the value of his
own goods being more than the amount of the policy, which he collected in
full, will not prejudice the rights of such persons; nor can he claim to have
the loss of his own goods first made good out of the fund received, before
owners of the other goods can share therein.

APPEAL from Circuit Court of Mobile.
Tried before Hon. HARRY T. TOULMIN.

[Snow v. Carr.]

The appellee, Mary Carr, brought this action against the appellant, Snow, to recover the insurance on a piano she had placed with him for sale or rent, and which had been destroyed by fire while in his possession. The complaint, which was filed December 9th, 1875, alleged that Snow had policies of insurance which covered the piano in question, and that he had collected from the insurance companies the full amount of the policies, and had not paid plaintiff her share of said insurance.

On the trial, it was shown that in the year 1873, the appellant, Snow, and one Brown, were partners in the business of selling and renting pianos, and other musical instruments, on commission, and that during that year the plaintiff placed in their charge the piano in question, which she testified was her own property, and worth two hundred and fifty dollars, and that neither Snow nor his partner, had ever sold or rented said piano for her, or in any way accounted to her for it. She further testified that she had not instructed Snow or any one to insure the piano for her, or agreed to pay any premium therefor, and that she did not know at the time Snow's store was consumed by fire, that he had any insurance on his store or its contents. It was shown that her piano was in the store of appellant, and was destroyed by fire in August, 1874, and that before suit was brought she had demanded pay for her piano out of the insurance money, which had been refused.

J. H. Higley, a witness for the plaintiff, testified that he was the secretary of the Washington Fire and Marine Insurance Company, in which the appellant Snow and his partner had, under the name of Snow & Brown, effected insurance on the stock of goods in their store in the year 1873, which was renewed and in force in 1874, and at the time of the fire which destroyed the property of Snow in August of that year. This witness produced the policy in which the property insured was described as follows: "Their stock of pianos, organs, musical instruments, musical merchandise, &c., kept by them for sale, their own or held in trust, or sold, but not delivered, contained, or to be contained, in the two story brick, slate and tin roof, building, Nos. 102 and 104 Dauphin street." The proofs of loss prepared by Snow after the fire, was also put in evidence by the plaintiff, and Higley then testified that the insurance company had paid to Snow the full amount of said policy. These proofs of losses contained a list of property valued at twenty-three thousand and twenty-41-100 dollars. The plaintiff also introduced one H. J. Robb,

who testified that he was the managing clerk in the office of the agency in Mobile of the London and Lancashire Insurance Company, and that Snow & Brown had in his company three policies of insurance, two for five thousand dollars each, and one for thirty-five hundred dollars, and that after the fire, and before this suit, the said insurance company had paid the losses on these policies to the appellant as the successor of Snow & Brown, cancelled said policies and returned them to the agents of the company in Mobile, who had returned them to the home office in Liverpool, England; that witness was the clerk of said agents, having had the custody of said policies, and well knew their contents. This witness was then asked by the plaintiff " whether or not said other policies were not similar to the policy already in evidence. The defendant objected to this oral proof of the contents of of said written papers, on the ground that they were not lost or destroyed, and that it was not shown that plaintiff had made any effort to get the policies, by taking the depositions of the custodian or otherwise." The court overruled the objection, and defendant excepted.

This witness then testified " that the policies in the London and Lancashire Company all described the property covered by them in the same language as that used in the Washington Fire and Marine Insurance Company's policy," set out in the testimony of Higley. Witness stated that he was certain of this, except as to the words " to be contained " where they occur in said description; as to these words, witness could not tell certainly, and thought they might have been omitted. This witness further testified that the London and Lancashire Insurance Company had settled with Snow by the same proofs of loss as the Washington Fire and Marine Insurance Company, and that on the second day of August, 1875, said company paid to Snow thirteen thousand nine hundred and fifty dollars, being the full amount of the policies held by him.

The defendant Snow testified that the plaintiff had never asked him to insure her piano, and that he had not included it in the proofs of loss which he rendered to the insurance companies, and had received no money therefor from the said insurance companies, but had received " all the money due and payable on the policies." This witness testified further that the value of his stock which was destroyed by said fire was a little over thirty-six thousand dollars, including about six or seven thousand dollars worth of consigned goods, belonging to persons in New York, as to which he

was under a contract to keep insured; and that the value of his own property destroyed by the fire exceeded the amount of all the policies by over ten thousand dollars. This was substantially all the evidence. The court charged the jury, and the defendant " excepted to the charge."

The defendant then requested the following written charges, which were each refused, and he separately excepted : " 1. If the jury believe from the evidence, that the piano claimed by the plaintiff was not included in the proof of loss of Snow against the insurance companies, in which his stock of goods was insured, and that he did not receive any money from said companies on account of said piano, then they must find for defendants. 2. If the jury believe from the evidence, that the piano of plaintiff was in the store of defendant at the time of the fire, subject to the order of the plaintiff or her agent, and that defendant had no interest in said piano, and received from the insurance companies no money on account of the loss of said piano, then they must find for the defend-ant. 3. If the jury believe from the evidence, that the piano of plaintiff was not included in the proof of loss of defendant exhibited to the insurance companies liable for the loss, and that he (defendant) received nothing from the companies for this piano, they must find for the defendant. 4. If the jury believe from the evidence, that the value of the goods in the store of the defendant, belonging to him at the time of the fire, was equal to or exceeded the amount of all the policies of insurance thereon, then the defendant had the right to pay himself for his own goods, from the money collected from the insurance companies, in preference to paying for goods held in trust or on commission. 5. Although the jury should believe from the evidence, that the plaintiff's piano was in the store of defendant in trust or on commission, and there was no agreement to insure and no custom of trade to insure property so situated, shown by the evidence, then they must find for the defendant, unless they further believe that the defendant received some money on account of the loss of said piano. 6. If the jury believe from the evidence that the plaintiff's piano was included in the policy, and the insur-ance was not adopted by the plaintiff prior to the payment of the loss, and the plaintiff knew of the loss at the time it occurred, then they must find for the defendant, unless they believe from the evidence that the defendant in point of fact received money from the insurance companies for said piano. 7. If the jury believe from the evidence that plaintiff did not instruct defendant to insure, and that it is no custom of

[Snow v. Carr.]

trade to insure pianos left for sale, and that the plaintiff did not know of any insurance being effected on the stock of goods and pianos in the store of defendant, and that defendant did not include this piano in his proofs and claim of loss, and received no money therefor, and that his own goods and the goods he had agreed to keep insured exceeded the amount of his policies, then they must find for defendant. 8. That there could be no ratification or adoption of the policies by plaintiff after the payment and surrender of the policies by defendant. 9. That if they believe from the evidence, that plaintiff knew of the fire, and loss of the piano, and did not adopt and ratify the policies for about one year thereafter and not until the money had been paid and the policies surrendered, and that there was an unreasonable length of time and waiver of her right to share in the insurance money, if she had any, they must find for the defendant. 10. If the jury believe from the evidence, that the property of defendant exceeded in value the amount of the several policies of insurance, then he had the right to satisfy his own claim first, and if there was no balance left after this was done, the plaintiff can not recover, and they must find for the defendant. 11. If the jury believe from the evidence that the value of the goods destroyed in the said fire belonging to defendant, and covered by the policies, exceeded the amount of all the policies, and exceeded the amount defendant received from the insurance companies, then he had the right to retain the money for his own loss, and they must find for defendant."

The admission of the testimony, and the refusals to charge as requested, are now assigned for error.

BOYLES & OVERALL, for appellant.

STEPHENS CROOM, contra.

No briefs came into the Reporter's hands.

MANNING, J.—This case, like that of *Snow v. Stoutz*, decided at the last term, arose out of the destruction of plaintiff's piano, by the burning of the store of defendant Snow in August, 1874, the piano being then therein for sale or rent. Mr. Snow was a seller of musical instruments and other merchandize, his own, and on commission for others. The two cases presented several questions common to both; but those upon which the judgment of Stoutz against Snow, in the Circuit Court was reversed, do not arise upon this record.

On the trial of that cause, upon objection made by plaintiff, evidence offered by defendant to show that he had not received from the insurers any money on account of the piano, and that it was not intended to be and was not insured under the general words in the policy, was erroneously excluded. And it is with reference to the facts so proposed to be proved as a part of the case, namely, that the piano was not insured, and that no money was received from the insurers on account of it, that the opinion in that case is to be understood. No such testimony was ruled out or objection made to it at the trial of the cause in hand.

The policies of insurance taken by and paid to Mr. Snow upon which both suits were brought, are the same. And in *Snow v. Stoutz*, two points that are presented in this case, were ruled in favor of appellee, Carr, namely : 1st, there was no error in receiving parol evidence of the contents of those policies which had been cancelled and returned to the company in England that issued them; and, 2d, the policies to Snow & Brown, of whom Snow was the successor, describing the goods insured as "their own or held in trust," by these latter general words, and in the absence of evidence to the contrary, embraced the piano of plaintiff. It was, however, further held that oral testimony on the part of Snow, was admissible to prove that those words were not intended to cover and therefore did not cover this piano, but related to other merchandize received from abroad, to be sold by him on commission, and which he was instructed to keep insured.—See, also, *Waters v. Assurance Co.*, 5 Ellis & Bl. 870, and *Lee v. Adsit*, 37 N. Y. 94, *et seq.* Upon these points there was no error in the rulings of the circuit judge in this instance.

Plaintiff testified that she had not instructed defendant to insure her piano, and said nothing about paying any premium for insurance; that she learned that her piano was destroyed by the fire of the 31st of August, 1874, and did not know or have any knowledge or information about the insurance until long after the fire. Defendant testified "that plaintiff had never asked him to insure her piano, and he had not included it in the *proofs of loss* which he rendered to the insurance companies, and had received no money therefor from said insurance companies, but *had received all the money due and payable on the policies.*" He said further that "the value of his own property destroyed in said fire, exceeded the amount of all the policies over $10,000." The insurance money was paid to him—a part in May, 1875, and the residue and larger

part in August of that year; and no demand for any part of this was made by plaintiff till after that time.

1. The general charge of the circuit judge to the jury was composed of special instructions, which obviously were not all erroneous. And the exception to that charge failing to designate any particular in which it was supposed to be wrong, does not, according to repeated decisions of this court, bring up any question for our determination. The legal propositions which we are to consider all arise upon the charges asked for defendant below and refused by the presiding judge. Without repeating them here, we proceed to consider the propositions founded upon them.

According to the bill of exceptions, it contains "substantially all the evidence" that was introduced. What Mr. Snow, when testifying for himself says, is, that he "was not asked to insure the piano, and had not included it in the proofs of loss." He did not say that it was not his purpose or understanding that the policies should protect the piano, or other like goods received as this was, in his store. Nor do any of the numerous charges asked on behalf of appellant, assume, even hypothetically, that the piano was not insured. And these charges if given would have required other explanatory ones on behalf of the plaintiff. No question founded upon the idea that the policies were not intended to and did not cover this instrument, is presented for us to decide.

The fact that plaintiff, Carr, did not request that her piano should be insured, does not prevent her from being entitled to the benefit of the insurance if effected. This was settled long ago by decisions made here and elsewhere—*Durand v. Thouron,* 1 Porter, 238; *Batre v. Durand,* id. 251; *Snow v. Stoutz, supra; Waters v. Assurance Co. supra; Siters v. Marrs,* 13 Penn. St. 218; *Home Insurance Co. v. Balt. Wareh.* 93 U. S. 543.

The value of the goods insured and burnt being much greater than the amount of insurance, it was not necessary in order to obtain the whole of this, to make proofs of all the goods destroyed. The omission, though, to do this, in such a case, can not hurt the plaintiff. According to the policies, Snow stood in the relation of a trustee for her: and he could not release himself from his responsibility as such, by failing to assert to others her right to a share of the money which he was demanding and receiving in full from the companies that owed it to him as trustee, as well as in his own right. They must be understood as paying, and he as accepting the fund as an indemnity, according to the policies, for the loss

[Snow v. Carr.]

of the goods insured, those of others as well as his own. *Batre v. Durand,* 1 Porter, 255–6.

Was it, as supposed, necessary to entitle plaintiff to the benefit of these policies, that she should, before they were paid, have ratified the acts by which they were procured, or in any other manner have expressly signified her adoption of the policies? In *Batre v. Durand, supra,* this was done after the fire, though before payment of the loss: and the court held that sufficient. Whether any such ratification was essential or not, was a question not then presented. The answer to it must depend on the nature and facts of the case. It is easy to imagine circumstances which would make a ratification requisite. But persons engaged in a business by which large quantities of the goods of others pass into their possession and charge, and out again to others, soon afterwards, may find it to their advantage, to take out policies of insurance at their own expense, for the protection of such goods. Said Lord CAMPBELL: " It would be most inconvenient in business, if a wharfinger could not, at his own cost, keep up a floating policy for the benefit of all who might become his customers."—5 Ellis & Bl. *supra,* p. 881. The expense might be " much more than repaid by augmented business induced by the confidence which an insurance would inspire."—*Liter v. Marrs,* 13 Penn. St. 220. For aught that appears, it was with such views and in consideration of their custom, that Mr. Snow took out policies which protected the goods of those from whom he received them for sale on commission. And this being beneficial to plaintiff, and not imposing upon her any burden, her assent to it, like that of a creditor to an unconditional assignment for his benefit from his debtor, is to be presumed.

It is contended that defendant is entitled to have the loss of his *own property* by the fire of August, 1874, first made good out of the insurance money; and that plaintiff's right is limited to the residue only, if there be any. The contrary of this was decided by the Supreme Court of Pennsylvania in *Liter v. Marrs,* 13 Penn. St. 220. In regard to a similar policy, it was there held that it afforded to the *property* of the assured and that of his customers, " equal protection." " Its terms (says the opinion), place all the goods in the warehouse from time to time, on the same level; all are equally protected. A similar decision had been made in this State more than twenty-five years before in *Batre v. Durand, supra.* It was then held, of a policy like those taken by Mr. Snow: " That the sum at which the policy

[Snow v. Carr.]

was valued may have been less than the value of all the arti-
cles consumed, does not destroy the right of any for whose
benefit the insurance was effected, to his proportion of the
proceeds."

In the Pennsylvania case cited, reference was made to a
passage found in Story on Agency, § 111 (as now numbered),
which seemed adverse to the views of the court.   Speaking
of agents, that learned jurist said :  " If they insure in their
own name only, they may in case of loss, recover the whole
amount of the value of the property insured from the under-
writers, and the surplus  beyond *their own interest,* will be a
resulting trust for the benefit of their principals."    Of the
authorities given for this passage, it is remarked in the opin-
ion, that they  " do not so much as allude in the slightest
manner to what is supposed " to be its meaning; and  no
other authority for it was then known.    It was, therefore,
inferred that it was not correctly understood.    Six years
afterwards in *Waters v. Assurance Co.,* a suit of the assured
against the insurer on a similar policy, Lord CAMPBELL,
C. J., remarked of the assured :  " They will be entitled to
apply so much to cover their own *interest* and will be trustee
for the owners as to the rest."—5 Ellis & Bl. 881.    And in
a like case of the assured against the insurer, (*Home Ins. Co.
v. Balt. Warehouse Co.*  93 U. S. 543,) Mr. Justice STRONG,
recently said :  " It is undoubtedly the law that wharfingers,
warehousemen and  commission merchants, having goods in
their possession, may insure  them  in  their own names, and
in case of loss, may recover the full amount of insurance for
the satisfaction of their own *claims* first, and  hold  the resi-
due for the owners."

But these learned lawyers did not mean thus to decide, in
cases between  parties in which the question could not arise,
that when agents or bailees insured goods of their own and
goods belonging to their customers, by policies like those in
question, and  received  the entire amount stipulated to be
paid in case of loss, they were entitled to payment in full for
the loss of *their property* first, and that the others were to be
paid only out of the residue.    They do not speak of the
property of the assured, but of their "interest" in or
" claims " against the *property* of their principals, for stor-
age, insurance, advances, commissions and other charges, to
secure which they had a lien on the property, and were enti-
tled to an extension of it to the insurance-money which they
should receive in place of the property.   This appears upon
an examination of the passages themselves, and is made more

[Brown v. Tutwiler.]

apparent by a consideration of the cases and of the authorities referred to, in the opinions.

The rule for distributing among several, the proceeds of a security provided for them all in common, but insufficient for the payment of all in full, is—that *equality is equity :* And if one of them have a lien, by law or contract, thereon, for payment of the debt of another to him, the lien shall be discharged out of the debtor's share of the fund.

This disposes of, adversely to appellant, all the questions raised by his exceptions and assignments of error.

The judgment of the Circuit Court must be affirmed.